### ADLER SIGN LETTER CO. et al. v. WAGNER SIGN SERVICE Inc.

### WAGNER SIGN SERVICE, Inc., v. BEN ADLER SIGNS, Inc., et al.

#### Nos. 7043, 7044.

Circuit Court of Appeals, Seventh Circuit.
April 25, 1940.

Rehearing Denied June 15, 1940.

Max W. Zabel, E. C. Gritzbaugh, Greek Wells, and Edward U. Dithmar, all of Chicago, Ill., for Adler Sign Letter Co.

Albert G. McCaleb and Warren C. Horton, both of Chicago, Ill., for Wagner Sign Service, Inc.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

These appeals involve three patents relating to changeable letter silhouette signs such as are used to display the titles of pictures upon the marquees of motion picture theatres. The appeal in No. 7043 involves two suits brought by Wagner Sign Service, Inc. (hereinafter referred to as "Wagner"). The first charges infringement of Wagner's Patent No. 2,048,040, by Adler Sign Letter Company and Ben Adler Signs, Inc. (hereinafter referred to as "Adler"). The second charges infringement of Wagner's Garner and Auer Patent No. 2,119,430, by Patio Theatre Company, a customer of Adler, (hereinafter referred to as "Patio.")

In Cause No. 7044, Adler charged Wagner with infringement of Adler's Patent No. 2,038,978, and also sought a declaratory judgment with respect to the Garner and Auer Patent No. 2,119,430. All of the suits were consolidated for trial. The court below found all of the patents valid and infringed. Thus, Wagner prevailed as to its suits predicated upon Patent No. 2,048,040 and Patent No. 2,119,430, while Adler prevailed in its suit upon Patent No. 2,038,978. Wagner's first patent issued in July, 1936, upon an application filed in February, 1934. Adler's patent issued in April, 1936, upon an application filed in June, 1935. Wagner's second patent (Garner and Auer) issued in May, 1938, upon an application filed in March, 1937.

The contested issues in each of the appeals are the validity of the respective patents and their infringement as determined by the District Court.

Wagner started in the sign business prior to 1920 and was incorporated in 1927 for the purpose of servicing, selling and installing signs. While not entirely limited to theatre signs, its principal business was in that field. Subsequent to 1920, the moving picture business experienced a rapid growth and many large and imposing theatres were built. One of their noticeable characteristics was the elaborate marquees extending out and over the sidewalk. Such marquees presented very desirable space for advertising displays and that was, in fact, their principal purpose. As is well known, the attractions at such theatres have short runs, and the advertising display announcing the program was an important, if not an essential, part of the business. With the frequent changing of programs, it was also important that a method be employed by which the advertising announcements could be changed expeditiously. During the fourteen-year period from 1920 to 1934, much effort was expended in this field, with no more than a meager amount of success. During that period, literally hundreds of types were offered, tried out, but generally discarded. Among the types most frequently used were the "bulb" letter signs in which electric bulbs were so arranged as to spell out an announcement; stenciled letter signs in which light from bulbs in the marquee box was allowed to escape only through stenciled openings; and the so-called "luminous" letter signs in which the light through glass-covered openings in metal sheets spelled out the announcements.

Late in 1933, so it is claimed, Wagner conceived and produced a simple and satisfactory structure for a changeable letter theatre sign, which is embodied in his first patent in suit. It is claimed that this invention standardized the sign equipment for theatres, and the record supports this contention.

The Adler companies were incorporated in 1933, and for two years were engaged in selling the now obsolete "luminous" letter-type of sign for theatre marquees. Subsequent to 1935, its sales were largely of a silhouette letter-sign equipment charged to infringe. Prior to that time, Adler called upon Wagner at the office of the latter and was shown the new type of sign equipment. He was furnished with samples of Wagner's sign and the terms upon which they might be purchased. A few months later, Adler commenced the manufacture and sale of his own silhouette sign. That the silhouette type of letter was rather widely acclaimed by the trade seems evident from the rapid increase in the total sales of both Wagner and Adler and, that it has come into general use is undisputed.

We shall first consider the validity of Wagner's first patent involving Claims 4, 5, 6 and 8. We shall, at this point, consider Claim 4[1] as typical, and later refer to distinguishing characteristics found in the other claims.

It is argued that by this invention, Wagner solved the important problem with which the industry was confronted, by providing a practical day-and-night sign of the silhouette type characterized by all the indispensible features now employed in standard changeable letter theatre signs. The "happy thought" which Wagner disclosed is stated thus: "A letter unit having a marginally flanged thin visual face boldly and clearly will stand out in high relief, as an island in a sea of light, against an illuminable translucent glass background; and that letter units, so constructed, though appearing to be very massive, actually will be of weight light enough to be carried independently of the glass by unobtrusive (even decorative) rod-like members replaceably and adjustably supporting such letter units."

Adler argues that the claims of Wagner are all anticipated by the prior art and cites in support thereof a number of prior art patents. In fact, fifty of such patents were cited in the court below but only eleven are mentioned here. We assume that the most pertinent prior art patents are the ones discussed in Adler's brief, and while we have examined some of the others, we

---

1 4. A sign device of the class described comprising, an opaque receptacle, a translucent display panel closing the side thereof, a plurality of light sources arranged within the box remote from the panel for illuminating said panel, a plurality of characters having the visual surface thereof parallel with the panel and flanged about their periphery, and means for holding said characters in position in front of the panel with the rearmost boundaries of the flanges immediately adjacent thereto, said means comprising supporting rods in front of the panel, the flanges being notched to engage said rods.

shall make reference only to those analyzed by Adler. They are, Send Patent, 1,805,478, issued May 12, 1931, Bindhammer Patent 1,163,638, issued December 14, 1915, Standish Patent, 1,884,335, issued October 25, 1932, and Francis Patent, 962,630 issued June 28, 1910. Adler points out that the identical letter of the patent in suit is shown in the Send Patent. There is this distinction, however, in that the Send letter was solid instead of being flanged as taught by Wagner. This is claimed by Wagner to be an important feature. Owing to the size of some of the letters they are, when solid, of such weight as to be difficult to handle. The flanged letter is an improvement in this respect. The Send letter was fastened to an upwardly-hooked lip which formed a part of the background. Such a lip could not be used in case of a glass background as was described by Wagner.

Bindhammer shows letters of thin sheet metal mounted upon and to the rear of a wire. They are devoid of flanges, giving them no marginal depth, which, it is claimed, is an important feature of Wagner.

Standish shows apparently a hollow letter with a metal background which precludes it from producing the silhouette effect. As in Send, the letters are mounted on hooks directly attached to the background.

Francis shows rods upon which thin letters having no substantial margin are mounted. They are stiffened by brackets which are notched for the reception of the horizontal rods. The letters are fastened to the rods by twisted wires. The Bindhammer and Francis Patents were cited in the patent office, but not those of Send and Standish. It is argued by Adler that it follows these two patents were overlooked by the patent office and, if the patent office had considered them, a different result would have been reached. We do not think it necessarily follows, however, merely from the fact that they were not cited, that they were overlooked. It is just as reasonable to conclude that they were considered and cast aside as not pertinent. Detroit Motor Appliance Co. v. Burke, D. C., 4 F.2d 118, 122.

We must admit that at the commencement of our study of this patent in connection with the prior art, we were dubious concerning its validity, occasioned, no doubt, by the apparent simplicity of the construction disclosed. More careful consideration, however, leads us to the opposite conclusion. A study of the testimony is rather convincing that the industry, for many years, had labored under the handicap of unsatisfactory signs, and as the prior art amply discloses, much effort was exerted to remedy the situation. Numerous devices were recommended, tried, and largely abandoned. That the silhouette sign, such as described by Wagner, met with hearty response on the part of theatre owners, is hardly open to question. They generally have supplanted the numerous letter advertising devices which had been theretofore employed. This situation is rather persuasive to the effect that the patent describes an invention of merit. The presumption of validity which attaches to its issuance, as well as the finding of the court below in favor of validity, supports our conclusion that it is valid.

This brings us to a consideration of Adler's letters which are charged to infringe. The two kinds of letters manufactured and sold by Adler are described as the Adler Notched Flanged Type, and the Adler Lug Type. We insert a drawing of each type, the one to the left being the notched flanged type and the one to the right, the lug type. It will be noted that Claim 4 (footnote 1)

ADLER NOTCHED-FLANGE TYPE.     ADLER LUG TYPE.

provides for supporting rods in front of the panel, "the flanges being notched to engage said rods." The same requirement is contained in Claims 4 and 6. Claim 8 is silent as to notched flanges, but provides "rod-like mounting means" for the letters. All of the claims, both those in suit and those not, refer either to a rod carrier as as a means of mounting, or notched flanges. This limitation found in the claims as to the method of mounting the letters is also emphasized in the specifications. It will be observed from the lug-type letter that it is not so designed and, in fact, could not be mounted upon a rod. It is mounted or held in place by inserting the lugs in channels extending horizontally, one at the top and one at the bottom of the panel. Wagner argues that these channels conform to the

description of the "rod-like mounting means" found in Claim 8. The channel, as a means of mounting the lug-type letter, is disclosed in the Send Patent, supra, and the limitation found in Wagner's in this respect might well have been to escape the disclosure found in Send. This is somewhat a matter of conjecture, however, on our part and we find nothing in the record to show that such was the fact, but whether it is or not, all the claims in suit clearly contain the limitation of the rod as a mounting means. Obviously, the lug letters can not be mounted upon a rod. We are not impressed with Wagner's argument that the "rod-like mounting means" described in Claim 8 can be reasonably interpreted to mean a channel such as is required in the use of such letters. This interpretation is strengthened by the fact that this limitation was not found in the claim as originally filed, but was inserted after rejection, and for the purpose, apparently, of securing its allowance. In Wagner's advertising matter, the channel is distinguished from the rod and the claim is made that the latter is superior because the former catches water and dirt.

Adler, in order to escape infringement, points out other limitations found in the claims and applicable generally to each type of letter. We shall not enter into a detailed discussion of these various limitations, as we regard the argument concerning them to be of a somewhat frivolous character. Claim 4 specifies a "visual surface" and "means for holding said characters in position in front of the panel with the rearmost boundaries of the flanges immediately adjacent thereto." It is Adler's contention, as we understand, that the patent in suit must be construed to mean letters, the flanges of which extend straight back from the surface of the letter rather than to extend at an outward angle from the face as is disclosed in his letters. The argument is predicated upon the requirement of a parallel visual surface. It is claimed that the flanges of Adler's letter, extending outward as they do rather than straight back, present a visual surface, but one not parallel with the panel. We do not accept this contention. To us what was meant by the visual surface and what the claim should be construed to mean is the front and fully exposed part of the letter. The testimony discloses that Adler's letters range from one-fourth to seven-sixteenths of an inch from the glass panel. It is argued that the language in Claim 4 (also in Claim 8) "immediately adjacent to the panel" does not read upon Adler's letters because of this space. Again we are not impressed with the point. The words must be given a reasonable construction and it would be unreasonable to think that the infringement could be avoided merely by providing a small space between the letter and the panel, rather than by placing the letter squarely against the panel.

■ Attention is also called to the language in Claim 5 (also Claim 6) "having an unbroken uniformly finished face." It is said this limitation does not read upon the Adler letter. The argument is to the same effect as that made concerning the "visual surface parallel with the panel" as found in Claims 4 and 8. It is no more convincing here than there. Other distinctions, even more trivial than those discussed, are argued. None of them, however, in our judgment, is sufficient to avoid infringement except the one first discussed pertaining to the lug-type letter. As to that type of letter, we are of the opinion there is no infringement. As to the notched flange-type, we think infringement is clearly shown.

■ We shall now consider Adler's patent No. 2,038,978. Claims 3, 4, and 5 are involved. They all have to do with a removable letter-carrying frame—in fact, this is the only novelty claimed for the invention. We see no important distinction in the three claims so far as this particular feature is concerned. We set forth, therefore, in a footnote[2] Claim 3 only.

Adler concedes that the asserted validity of this patent presents a close question. In his brief, it is stated: " * * * Viewing the structures of the Send patent and the Adler removable frame without taking into account any surrounding circumstances at all, we would be led to say that it did not involve invention to provide the removable frame of Adler. * * *"

It is argued, however, that the removable frame idea was such a commercial success as to warrant a holding of validity.

---

[2] 3. A changeable sign comprising a frame, a glass therein, a light behind said glass, said frame provided with upper and lower channels, a letter supporting device having cross members and upright members projecting beyond the cross members, the upright members being received in said channels, and letters removably connected with said cross members.

Wagner controverts validity upon two grounds, (1) that the device described is anticipated by the prior art, and (2) that the claims cover elements of an exhausted combination. We have reached the conclusion that the charge of invalidity must be sustained upon both grounds. As to the prior art, Wagner relies upon his first patent, as well as his structural device manufactured and sold by him, and on Schaffner Patent No. 1,352,031 issued September 7, 1920. The following diagrams illustrate the situation rather clearly:

FIG. A

FIG. B

FIG. C

Figure A represents the letter-supporting device of Wagner's first patent, and was old in the art. Figure B represents the letter-supporting device of Adler's patent for notched flanged letters, and Figure C for lug letters. Wagner, in his first patent, discloses a combination consisting of a sign box enclosing a translucent glass panel. On the front of this box and also in front of the glass panel is fastened a rectangular metal frame described as removable. Welded or secured in some other manner to the upright portions of said frame and extending crosswise thereto are the rod-like members which support letters in front of, but independently of the glass panel. As the above diagrams disclose, Adler's letter-carrying rods are fastened to vertical members in a manner similar to Wagner's. By omitting the top and bottom cross section of Wagner's frame, he had a letter-carrying device quite similar to Wagner's. This alteration in itself, however, would have served no useful purpose unless a means was disclosed for attaching the device to the sign box and in front of the panel. This was accomplished by providing the sign-box structure of the prior art with channel means at the top extending downwardly, and at the bottom extending upwardly for the purpose of carrying the removable frame device. It seems to us that this idea is rather clearly disclosed by Schaffner. The sum total of what Adler did was to utilize in a Schaffner signbox a letter-carrying frame not essentially different from that of Wagner. Adler stresses the commercial success of its device, or rather the important role occupied by the removable frame idea, upon the industry. We are unable to say, from a reading of the record, that there is any merit in this argument. It is true that the silhouette letter sign was widely proclaimed by the industry, but we are of the opinion that most, if not all, of the credit must go to Wagner rather than Adler. In fact, it appears that Adler abandoned the manufacture and sale of such removable frames mounted in front of, and separate from the glass panel, as taught by this patent. As we understand, Wagner never manufactured or sold the device shown by Adler, although in 1937 he commenced the manufacture and sale of a removable frame called the 3-in-1 unit which is the structure in controversy in Wagner's second suit, discussed hereinafter.

We conclude, therefore, that the structure of Adler does not constitute invention, but if we are in error in this we think it is invalid for another reason. It seems apparent from a reading of the claims (footnote 2) that a combination of elements is described, all old in the art except the removable letter-carrying device. As stated heretofore, the improvement consists solely of the removable frame. In Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008, the court said: "* * * And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination. * * *"

Bassick Manufacturing Co. v. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251, is to the same effect. We con-

clude, under the rule thus announced, that the patent before us is invalid.

■ Wagner's second patent, No. 2,119,-430 (issued to Garner and Auer in May, 1938) called the 3-in-1 unit, relates to a removable frame which embraces the translucent panel, together with the letter-carrying device, all in one. Claims 14 and 16 are in suit and the latter appears to be typical.[3] Wagner, concerning the validity of this patent, is equally as frank as was Adler with reference to his patent. Wagner, in his brief, states: " * * * Whether or not Messrs. Garner and Auer evolved this 3-in-1 unit by the exercise of the inventive faculty, or merely by the exercise of a high degree of skill and good mechanical judgment, may be a rather close question. * * *"

The argument is then made that in the light of the particular facts, we should resolve any doubt in favor of its validity. Its chief merit lies in the fact that it can be more readily installed and maintained by unskilled workmen. The following diagram illustrates not only the structure of the patent itself, but the simplicity by which it may be removed.

The diagram is illustrative of cross bars for notched flanged · letters. Channel-shaped cross bars would be necessary for lug letters. The similarity of this structure with the Adler structure is readily apparent by a comparison of this diagram with those used heretofore illustrative of the Adler device. Adler shows a frame consisting of two vertical members with letter-carrying cross-rods attached thereto. His structure is placed in a horizontal upper and lower

channel in front of a panel. The improvement claimed for this patent is the requirement that the panel be attached to the vertical members. It is suggested that such vertical members be channeled so that the plates may be inserted therein. Evidently, it was the intention that the panel be permanently attached to the vertical members. At any rate the patent suggests "any of the channels of the upright carrier members may be lined with suitable resilient material." Various means of accomplishing such attachment are suggested. The question narrows itself solely as to whether the alteration of the Adler device, by providing channels in the vertical members, constitutes invention. We conclude it does not. Especially is this true in view of the prior art Send Patent 1,779,190. There, as in other prior art structures, a channel was described for the purpose of receiving the glass panel. True, the channels provided by Send were horizontal, but it is our opinion that the changing of this panel-receiving channel from the horizontal, as shown by Send, to the vertical, as is called for in the patent in suit, would naturally suggest itself to a person skilled in the art. In fact, it would suggest itself to one not so skilled, especially in view of Adler's disclosure. Again, we are met with the argument as to the wide acclaim bestowed upon this 3-in-1 structure. As we said, however, referring to the same argument made in behalf of Adler's structure, we are unable to ascertain just what proportion of the commercial success attained by the Wagner structure generally was due to this particular improvement. Our attention is also called to the fact that Adler was cited against this second Wagner patent in the patent office. This, together with the issuance of the patent, lends support. to Wagner's argument in favor of validity. Our study of the situation, however, convinces us that the improvement falls short of constituting invention.

■ The record is convincing to the effect that Wagner and Adler were keen and energetic competitors in the silhouette letter-sign business. They each accuse the other of "slavish copying" and of "doggedly following in the footsteps of the other." It is evident that they were both watching

3 16. In a display sign, a combination display panel, panel carrier, and letter mounting arrangement, comprising a glass panel, channel members attached to the edge of the panel at opposite sides there-of and embracing at least a portion of the lower edge of the panel, and cross members connecting said channel members and extending in front of said panel across the face thereof.

closely the improvements developed by the other and had no hesitancy in adopting such improvements. Such adoption, however, does not constitute infringement as long as the improvement was merely the result of mechanical skill rather than invention.

We hold, therefore, Wagner's first patent valid and, that Adler's letter of the notched flanged-type infringes, but that Adler's letter of the lug-type does not infringe. Both Adler's patent and Wagner's second patent are held to be invalid for the reasons stated heretofore. Accordingly, the decree of the District Court is affirmed in part and reversed in part.