## ARTMOORE CO. et al. v. DAYLESS MFG. CO. et al.
### No. 50 C 1362.

United States District Court
N. D. Illinois, E. D.

Dec. 23, 1952.

16. It was stipulated by counsel that the value of each of the three Cadillacs was $4,100.

Eugene C. Knoblock, South Bend, Ind., Parker & Carter, Chicago, Ill., for plaintiffs.

Maurice S. Cayne and Benton Atwood, Chicago, Ill., for defendants.

PERRY, District Judge.

In this action, plaintiffs, seeking an injunction, damages, costs, and reasonable attorney's fees, charge the defendants with infringement of claims 7 and 10 of the Kenneth S. Rogers Patent No. 2,108,727, which was issued on February 15, 1938. The defendants deny infringement and the validity of the claims alleged to be infringed.

The plaintiff, Artmoore Company, is a corporation of Wisconsin, having its principal place of business at Milwaukee, Wisconsin. The plaintiff, Niles Metalcraft Company, is a copartnership doing business at Niles, Michigan, the partners therein being Levant C. Rogers and Dorothy Rogers of Delton, Michigan. The copartnership was substituted as a party plaintiff pursuant to motion and stipulation. The copartnership, Niles Metalcraft Company, owns the patent in suit, and manufactures the plaintiffs' mop. Artmoore Company is the exclusive distributor of the mops manufactured by the copartnership, and sells the patented mops under the trade-mark "The New Art Cleaner."

The defendants have stipulated that title to the patent is vested in the copartners, Levant C. Rogers and Dorothy Rogers, doing business as the Niles Metalcraft Company.

The defendants are the Dayless Manufacturing Company, a corporation of the State of Illinois, having its principal place of business at Chicago, Illinois, and Leslie Hoffman, an officer, director and general manager of the Dayless Manufacturing Company. The defendants also manufacture and sell mops, which are alleged to infringe each of Claims 7 and 10 of the Rogers Patent.

These claims assert the invention of a mop, which comprises a handle, a carrier unit having an expansible mopping member therein, a rigid frame unit arching the carrier, and the means carried by the handle and cooperating with the handle to mount the carrier unit and the rigid frame unit and to effect a reciprocal relationship between the two units. The rigid frame unit, which arches the carrier unit, has rollers at its opposite sides in a fixed predetermined spaced relation and they engage the opposite sides of the mopping member. In this engagement, one of the units is reciprocable relative to the other to wring the member between the rollers.

To use this device, it is grasped by the handle and moved over the surface to be cleaned with the sponge bearing on that surface. All parts of the device maintain their respective proper positions during this operation, and none moves relative to the others, even though there are no latches or springs acting upon the parts.

The mop is wrung by pivoting the handle and the lever relative to each other about the center which is located on a ferrule at the lower end of the handle. This movement of the lever, outward and downward, and away from the handle, causes a relative movement between the roller frame and the sponge so that the flared part of the sponge is passed between the fixedly spaced rollers. The rollers progressively compress and wring the sponge, rolling freely over the sides thereof, and expelling water and dirt from the sponge. As the return stroke of the wringing attachment occurs, the sponge is permitted to expand. This expansion acts upon the rollers to assist in the return of the rollers and the lever to an inoperative position and thereafter serves to hold those parts in that inoperative position as the mop is being used.

In the accused device, a mop handle has secured thereto a ferrule, from which projects a rigid arching carrier. A pair of spaced legs is located at each end of this rigid frame carrier. The rigid frame is formed of two parts which are fixedly secured together by bolts and nuts anchored at flanges projecting from the ferrule portion so as to hold the legs of each end of

the frame spaced apart at a fixed distance. The legs of each pair lie in a common plane and at their free ends have apertures which journal steel shafts upon which hard rubber rollers are mounted. An inverted metal channel has its sides converging downwardly toward their free edges and a portion of a sponge rubber member is compressed and gripped within the channel. The remaining portion of the rubber sponge flares outwardly from the mouth of the channel and its outermost or bottom surface is curved. The channel is normally positioned between the rollers and is arched by the legs of the rigid frame. The back of the channel has spaced brackets carried thereby and projecting therefrom, to which are pivotally connected the ends of elongated links or straps which pass through openings in the transverse upper portions of the frame at opposite sides of the ferrule. A lever is pivoted to the handle and has pivotally connected thereto between its ends the upper ends of the links or straps.

In the operation of the accused device, the rollers bear upon the flared sides of the sponge in normal position to be spaced above the working surface engaged by the sponge. When it is desired to wring the mop, the handle and the lever are grasped and swung about the pivot, located approximately near the middle of the handle. This action causes a progressive movement of the sponge between the fixed spaced rollers to wring the sponge and expel liquid therefrom. Upon return of the parts to normal position, the sponge can assist in the return action and maintains the rollers in their normal retracted position.

At the outset, the defendants object to the claims in suit because they were drawn to a broader scope after formal allowance of the claims of the patent in suit, and after examination had been completed by the Patent Office. The claims in suit, however, were fairly disclosed by the original application. A patentee's invention may be broader than the particular embodiment shown in his specification. The patentee may broaden the scope of his claims during prosecution of his application as long as broadened claims are fairly supported by disclosures of his original application. American Anode, Inc., v. Lee-Tex Rubber Products Corp., 7 Cir., 136 F.2d 581.

The defendants also contend that a pivoted lever is not included in any claim in issue. Claim 7 specifies a "means carried by the handle and cooperating with said handle to mount said units and effect said reciprocation." This claim, read in conjunction with the description and specifications, discloses a pivoted lever. Compare Jones v. Evans, 7 Cir., 215 F. 586.

The defendants contend that the prior art patents to Rogers, No. 2,008,615, Bates, No. 2,014,488, and particularly to Kawasaki, No. 1,137,760, and Sanguinet, No. 1,352,837 fully disclose the structure claimed in the two claims in suit. It is their position that the patent in suit constitutes a judicious selection and arrangement of old elements, which are due solely to mechanical skill. Such a device does not rise to the dignity of invention.

The defendants' position that mere mechanical skill in the use of elements old in the art is not patentable invention represents a correct statement of the law. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L. Ed. 58; National Pressure Cooker Co. v. Aluminum Goods Mfg. Co., 7 Cir., 162 F.2d 26; Hamilton Mfg. Co. v. Illinois Surgical Supply Co., 7 Cir., 193 F.2d 938. The difficulty with this position lies in the fact that it is not applicable to the case before the bar. A careful examination of the patent claims in suit discloses a combination of three basic elements which make up a device with advantages, not possessed by the devices responding to the prior patents. Of these three elements, two are old, namely, the lever which pivots on the ferrule at the lower end of the handle and the expansible mopping member. The rigid frame unit with its rollers at opposite sides thereof *in fixed predetermined spaced relation* is not disclosed in the prior art; it is entirely new. As this court views the evidence before it, it does not find in the plaintiff's device a conjunction or concert of known elements which must contribute something in order that the device be patentable. Great

Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. On the contrary, it finds that the patent in suit discloses a combination in a device, which introduces an entirely new element in the art, the rigid frame unit with its fixed spacing of the rollers. In the Court's view, this rigid frame unit is the important element in the combination, which possesses several practical advantages.

The fixed spacing of the rollers in the rigid frame unit provides a uniform and regulated wringing action over an extended period of time. If this wringing element were not rigid and if, on the other hand, the spacing between its rollers were dependent upon the use of springs, repeated use would decrease the resilience of the springs. Eventually, the spacing between the rollers would be widened. This would result in an increasingly less satisfactory wringing action. The user then would be forced to repair the resilient means which retract the rollers or he could continue to use the mop in its less satisfactory state and supplement the wringing action with manual pressure upon the rollers.

The combination of the rigid frame unit with its fixed spacing of rollers and the resilient expansible mopping member also provides several novel practical advantages. The related activity of these two elements with each other serves to assist the return of the wringing member to its retracted position after the wringing is completed. Once it has returned, this related activity serves to position the rollers and to hold the elements firmly, thereby avoiding any annoying chattering during continued use of the mop. This promotes a quicker and more pleasant operation. This combination also produces an economic advantage, not possible in any prior device. The mopping member, during use, is forced against the rollers and not against the sides of metal channel into which it has been set. This serves to protect the expansible mopping member from any damaging cuts and shearings. These advantages are due not to the nature of the mopping member alone but to the combined action of the mopping member and the fixed rollers upon each other. If the rollers were not fixed, the mop would tend to force itself *through* the rollers, and none of these advantages would be present. This result would eventually occur because continued use would cause the retracting means of the rollers to become less resilient.

The combined action of the three elements, the fixed rollers, the resilient mopping member, and the operating lever mechanism, provide a mop which can be used with minimum exertion. It gives the user a mop with a mechanical wringing action, which can be operated without the wetting of hands. This advantage is not achieved by the lever mechanism alone. It is dependent upon the cooperation of the three elements with each other. In a wringing member, wherein the rollers were not fixed, continued use would cause the rollers to spread to such a point that one would be forced to assist the wringing action manually, regardless of the presence or absence of a lever mechanism on the mop.

The Court has carefully examined the sixteen patents, which have been introduced by the defendants. It finds that none of them disclose the combination of the patent in suit. They all lack what this Court considers the key element in the plaintiff's disclosure, the rigid frame unit with the fixed spacing of the rollers.

As stated previously, the defendants have urged four of these patents in particular to establish anticipation. Rogers Patent No. 2,008,615, dated July 16, 1935, is directed to a window cleaner with an attached squeegee strip. It is not a mop. It has no wringing attachment.

Bates Patent No. 2,014,488, dated September 17, 1935, discloses a mop with plates hinged thereto and adapted to be swung or pivoted to squeeze a sponge rubber mopping element. The device requires a latch to hold the plates in retracted position when the device is being used for mopping purposes. It has no rigid frame unit or lever mechanism. Consequently, it does not offer the advantages of the plaintiffs' device. The wringing operation is entirely manual. It cannot be uniform. It offers no protec-

tion to the sponge mop member. The absence of the fixed rollers and lever mechanism leave the user to an operation, which cannot always be said to be free from the discomfort and inconvenience of the wetting of the hands.

The fact that Bates teaches the use of a sponge mop in a channel with an outward flare does not anticipate and thereby invalidate Claim 10 of the patent in suit. As pointed out previously, Claim 10 embodies a combination of the elements and the advantageous results stem from the operation of the combination and not the mopping member alone.

Kawasaki Patent No. 1,137,760, dated May 4, 1915, discloses a string mop with levers pivoted to a ring slideable upon a mop handle. The levers mount wringer rollers which are swung toward or away from each other by the pivoting of the levers. A spring is required to normally press the wringing rollers toward each other. A wedge type lock is shown for holding the levers in fixed relation as set, but this lock accommodates change in the spacing of the rollers at the will of the operator or according to the variation of the mop element.

Sanguinet Patent No. 1,352,837, issued September 14, 1920, discloses a string mop in which a pair of wringer rollers are mounted upon elongated resilient arms carried by a mop handle. The rollers are urged toward each other by springs. No lever to provide mechanical advantage is shown in this patent. It also discloses rollers similar to those used to mount window shades, being spring actuated and having wound there around a web, which is intended to hold the mop head in compact relation for the purpose of preventing retraction of the rollers.

Both patents disclose that the rollers are urged toward each other by springs. The consequent resilient action leads to the only conclusion that the spacing between the rollers is not fixed, that neither patent discloses a rigid frame unit. Without this element, devices responding to the Kawasaki and the Sanguinet are unable to provide the practical advantages of the patent in suit. These advantages, furthermore, cannot be achieved, as the defendants contend, by substitution of a sponge mop in a Kawasaki or Sanguinet device. As outlined previously, these advantages are due not to the sponge mop alone, but to the combined operation of the elements. Defendants also insist that Kawasaki and Sanguinet disclose fixed spacing of the rollers. Neither the patents themselves nor the testimony of the defendants' expert witness support this contention.

It is the Court's view that the patent in suit offers a device, which is new and useful and which results from inventive genius rather than mere mechanical skill. Mopwringers have been present in the art since the Miller Patent No. 348,033 of 1886. If one were to ascribe the combination of the patent in suit to mechanical skill alone, it would be fair to assume that this result would have been achieved at an earlier date. On the contrary, defendants' exhibits advance sixteen patents, none of which offer a satisfactory solution to the problem of mechanical mop and mop-wringer. This would appear to be persuasive of the futility of prior attempts to solve the problem. Ric-Wil Co. v. E. B. Kaiser Co., 7 Cir., 179 F.2d 401.

Commercial success without invention will not make patentability. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra. Upon determination of the validity of the patent, however, commercial success can serve as a corroborative aid. It can be utilized to demonstrate the acceptance of the device in the market. This evidence, in the case before the bar, is impressive. When the plaintiffs' device was introduced, the competitive items on the market were the conventional string or rag mop and the Bates sponge rubber mop. There is no evidence that the Kawasaki or Sanguinet mop was ever manufactured and placed in the commercial market. The Bates mop is no longer manufactured and sold. The standard rag or string mop sold in 1935 at an average price of 49 cents; the patented construction sold at $2.95. Nevertheless, the plaintiffs' mop enjoyed widespread acceptance. More than 2,000,000 mops have been sold by the plaintiffs. In view of this large sale at a

price much higher than the price of a standard rag mop during a period when this nation did not always enjoy financial prosperity, this Court cannot agree with the defendants' contention that the acceptance of the patented construction is due solely to a successful advertising program.

 In determining whether an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim. If the accused matter falls clearly within the claim, infringement is made out. The accused device infringes if it performs the same function in substantially the same way. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L. Ed. 1097. Details of the accused mop and its operation have been set out in an earlier portion of this memorandum. It is the view of this Court that this accused device falls within the claims of the patent in suit; it therefore infringes the patent. Despite the mathematical refinements of the defendants' expert witness regarding the effect of the stress of the mop upon the frame unit in the accused device, the Court, as it views this device, easily observes that it possesses a rigid and not a resilient frame unit. The Court also observes that the rollers are held in a retracted position by the flared sponge mop in the accused device. Upon examination of both devices, the Court arrives at the view that the accused device performs the same function in substantially the same way. In this comparison, the Court observes only one difference between the two devices. The patent in suit illustrates the sponge carrier secured on the end of the handle and the roller carrier connected to the pivoted operating lever. In the accused device, the roller carrier is secured on the end of the handle and the sponge carrier is connected to the pivoted operating lever. This change of parts does not affect the operation of the device as compared to the patented device, nor does it alter the results accomplished by the defendants' device as compared to those accomplished by the patented device. This is a transposition and reversal of parts, which do not avoid infringement. Chicago Lock Co. v. Tratsch,

7 Cir., 72 F.2d 482; Hunt v. Armour & Co., 7 Cir., 185 F.2d 722.

The defendant, Leslie Hoffman, was an agent of the plaintiff Artmoore Company, having an exclusive sales territory in the City of Chicago, for about two years. He continued this business until his contract was cancelled by the letter of August 7, 1950, sent to him by the Artmoore Company after it had learned that he had begun to sell the accused mop in association with the defendant, Dayless Manufacturing Company. During the time that his contract with the Artmoore Company was in force, Hoffman received referrals of inquiries from prospective purchasers and prospective salesmen, totalling 459 in number. During the time that Leslie Hoffman acted as sales agent of plaintiff Artmoore Company, and throughout the time since the issuance of said patent, notices of the patent in suit were applied to all of plaintiffs' mops.

Hoffman first offered the accused device to the trade in May, 1950. He did not notify the plaintiff Artmoore Company, that he was offering this mop. The plaintiff learned of his manufacturing and selling activities indirectly in July, 1950. During the time that Leslie Hoffman was commencing the manufacture and sale of the defendants' accused device, namely, from June 1, 1950, until July, 1950, when the Artmoore Company first learned of his activities. The Artmoore Company forwarded to Hoffman 38 referrals of inquiries from prospective purchasers and salesmen. Notice of infringement was given to the Dayless Manufacturing Company on July 26, 1950. On August 7, 1950, when Leslie Hoffman's connection with the Dayless Manufacturing Company was determined, the letter, cancelling Hoffman's contract, was sent to him. In the Court's view, Hoffman's conduct, as set out above, with reference to the accused device when he was still a trusted agent of the plaintiff Artmoore Company, with full knowledge of the patented device in suit, represents wilful and wanton infringement.

Accordingly, judgment and decree will be entered for the plaintiffs.