ARTMOORE CO. et al. v. DAYLESS
MFG. CO., Inc. et al.
No. 10819.

United States Court of Appeals,
Seventh Circuit.

Nov. 6, 1953.

Rehearing Denied Dec. 14, 1953.

Writ of Certiorari Denied
March 8, 1954.

See 74 S.Ct. 518.

Maurice S. Cayne, Benton Atwood, Chicago, Ill., for defendants-appellants.

Eugene C. Knoblock, South Bend, Ind., Clarence F. Poole, and Parker & Carter, Chicago, Ill., for plaintiffs-appellees.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This action was commenced for the alleged infringement of claims 7 and 10 of patent No. 2,108,727, entitled "Mop," issued February 15, 1938, to K. S. Rogers. At that time the patent was owned by Niles Metalcraft Company, a Michigan corporation, but ownership was, during the pendency of the action, transferred to Levant C. Rogers and Dorothy Rogers, co-partners doing business as Niles Metalcraft Company, which was substituted as a party plaintiff. The other plaintiff, Artmoore Company, is the exclusive distributor of the mop manufactured under the patent in suit.

Levant C. Rogers is a brother of K. S. Rogers, the inventor of the patent, now deceased. The defendant Leslie Hoffman is an official and manager of the defendant Dayless Manufacturing Company, Inc., which manufactures the alleged infringing mop.

The subject matter of the patent relates particularly to a mop employing sponge rubber as a mopping element. The object of the invention as stated in its specifications "is to provide a mop * * * with novel means for extracting water from the mop element * * * in which the carrier for the mopping element serves to guide a shiftable wringing roller assembly * * * a mop with a sponge rubber mop head with respect to which a rigid roller journaling frame is shiftable to extract water and dirt from the sponge rubber by compressing the same in a movement toward the outer end thereof."

The patent contains ten claims but, as stated, only two are in issue. Claim 7 reads: "A mop comprising a handle, a carrier unit having an expansible mopping member therein, a rigid frame unit arching the carrier, said frame unit having rollers at opposite sides thereof in fixed predetermined spaced relation and engaging opposite sides of the mopping member, one of said units being reciprocable relative to the other to wring said mopping member between said rollers and means carried by the handle and cooperating with said handle to mount said units and effect said reciprocation." Claim 10 reads: "A device as set forth in claim 7 wherein the mopping member is formed from a resilient expansible material and normally bulging whereby said frame and rollers will be held by the bulging thereof in inoperative position."

After a rather extended hearing, the District Judge rendered a memorandum opinion, 109 F.Supp. 181, 186, made findings of fact and conclusions drawn therefrom. It was found and concluded that the claims in issue were valid and infringed. The court also found and concluded that defendants' conduct in con-

nection with the manufacture and sale of the alleged infringing mop constituted "wilful and wanton infringement." A judgment was entered December 31, 1952, predicated upon the findings and conclusions thus noted, sustaining the validity of the claims in issue and their wanton and wilful infringement by defendants, awarding damages to plaintiffs with reference to a special master for an accounting, and enjoining and restraining defendants in the manufacture or sale of a mop embodying the claims in suit. The judgment also awarded to plaintiffs taxable costs and reasonable attorney fees to be recovered from defendants. From this judgment the appeal comes to this court.

While there are certain subsidiary issues, such as the asserted improper admission of testimony and file wrapper estoppel, the principal issues relate to the validity of the claims, their infringement by defendants and, if there be infringement, whether it was wilful and wanton.

On the issue of validity the findings of the District Court in abbreviated form are: The patent covers a mop employing a sponge rubber mopping element with novel means for extracting water from the mopping element. The mop includes a unit in which a rubber sponge is clamped firmly in a steel channel, a unit including a rigid bridge having four legs straddling the opposite sides of the channel and journaling two steel pins mounting rubber rolls in a fixed position and in engagement with the opposite sides of the mopping member, a handle, and means including a lever carried by the handle and cooperating with the handle to effect a reciprocal relationship between the units to wring the mopping member between the rollers. The combination and arrangement of the parts causes them to maintain their proper relation when used for cleaning purposes even though no latches and springs are employed; permits a progressive compressive wringing of the flared part of the sponge between fixedly spaced rollers, with the expansion of the sponge

assisting return of the rollers and the operating lever to an inoperative position and also serving to hold the same in inoperative position after release of the lever; and the fixed spacing of the rollers by the rigid frame unit assures a uniform and regulated action over an extended period of time.

The findings further relate that the patented mop possesses a number of advantages resulting from the combination and arrangement of its parts, and from its novel rigid frame unit providing fixed spacing of the rollers. Plaintiffs' mop has been in commercial use since 1935, and it embodies the invention of claims 7 and 10 of the Rogers patent. Plaintiffs' commercial mop sold to the trade for over five times as much as conventional rag string mops, but nevertheless over 2,000,000 have been sold and it has met with acceptance by housewives and other users because of its advantages. Prior to the invention of the patent in suit, no self-wringing mop with attached wringing rollers had been made available to the public. None of the devices of the expired prior art patents relied upon by defendants to anticipate the claims of the patent in suit was practical as a self-wringing mop.

On the issue of validity we start, as we must in all patent cases and as the District Court no doubt did, with the presumption of validity which attaches to the grant. This presumption is not an idle gesture, as defendants would have us believe, but is a positive factor which must be overcome by one who asserts invalidity. Radio Corporation of America v. Radio Engineering Laboratories, 293 U.S. 1, 8, 54 S.Ct. 752, 78 L.Ed. 1453; Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983. In addition, we have the findings of fact made by the District Court, which we are not at liberty on review to ignore unless clearly erroneous. Federal Rule Civil Practice 52, 28 U.S. C.A. Thus, the defendants are faced with the difficult problem of not only overcoming the presumption in favor of validity but in demonstrating that the

findings of the District Court sustaining validity are clearly erroneous.

While the defendants at the trial introduced many prior art patents and publications in an attempt to show that the patent in suit was anticipated by the prior art, only five of such patents are relied upon in this court. However, we need mention only three, because they are asserted to be the most pertinent. They are Rogers No. 2,008,615, Kawasaki No. 1,137,760, and Sanguinet No. 1,352,-837, and much stress is laid upon the fact that these three patents were not cited in the patent office. We have read the oral testimony, examined the documentary evidence and physical exhibits, and we are satisfied that the record supports the findings as made. Any doubt which we might entertain is dispelled by the keen analysis made by the District Court (Judge Perry) of the principles embodied in the patent in suit as well as the teachings of the prior art. We discern no reason to ignore the findings thus made, and certainly we cannot hold that they are clearly erroneous. Having thus concluded, no good purpose could be served by a detailed analysis either of the patent in suit or of the prior art relied upon to anticipate.

■ Defendants' argument based on these prior art patents, not cited in the patent office, is not convincing. It has been held, and we think with logic, that it is as reasonable to conclude that a prior art patent not cited was considered and cast aside because not pertinent, as to conclude that it was inadvertently overlooked. Adler Sign Letter Co. v. Wagner Sign Service, 7 Cir., 112 F.2d 264, 267; Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 178 F.2d 794, 802. In any event, both Kawasaki (issued in 1915) and Sanguinet (issued in 1920) have long since expired and, so far as this record discloses, neither during their lifetime nor since their demise have they been used for any purpose until they were brought forth in an effort to invalidate the patent in suit. It is unrealistic to reason that Rogers did nothing more than might be expected of the skilled mechanic, when neither the owners of such prior art patents nor any member of the public after their expiration discovered that their teachings were worth reducing to practice. Especially is this true in view of the fact that the field was wide open and that Rogers was the first to disclose a sponge rubber mop with a wringing attachment, which was placed in manufacture and on the market. The wide acclaim with which it was received by housewives is proof of its utility and is at least some indication of its novelty. While those of the prior art disclosed without result, Rogers reduced his disclosure to practice, and with success.

■ The District Court, on the issue of infringement, in its memorandum opinion stated:

"In determining whether an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim. If the accused matter falls clearly within the claim, infringement is made out. The accused device infringes if it performs the same function in substantially the same way. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097. Details of the accused mop and its operation have been set out in an earlier portion of this memorandum. It is the view of this Court that this accused device falls within the claims of the patent in suit; it therefore infringes the patent. Despite the mathematical refinements of the defendants' expert witness regarding the effect of the stress of the mop upon the frame unit in the accused device, the Court, as it views this device, easily observes that it possesses a rigid and not a resilient frame unit. The Court also observes that the rollers are held in a retracted position by the flared sponge mop in the accused device. Upon examination of both devices, the Court arrives at the view that the accused device performs the

same function in substantially the same way. In this comparison, the Court observes only one difference between the two devices. The patent in suit illustrates the sponge carrier secured on the end of the handle and the roller carrier connected to the pivoted operating lever. In the accused device, the roller carrier is secured on the end of the handle and the sponge carrier is connected to the pivoted operating lever. This change of parts does not affect the operation of the device as compared to the patented device, nor does it alter the results accomplished by the defendants' device as compared to those accomplished by the patented device. This is a transposition and reversal of parts, which do not avoid infringement. Chicago Lock Co. v. Tratsch, 7 Cir., 72 F.2d 482, Hunt v. Armour & Co., 7 Cir., 185 F.2d 722."

We think this reasoning of the District Court is justified by the record and that the findings relative to infringement are sufficiently supported. At any rate, we cannot conclude that the findings in this respect are clearly erroneous. It may be, as argued by defendants, that their mop possesses some advantages over the mop in suit, but there was little, if any, difference in the end result and it was produced in substantially the same way. And we agree with the District Court that there is no basis in the history of the proceedings in the patent office for the application of the doctrine of file wrapper estoppel.

While we have little, if any, difficulty in accepting the findings and conclusions of the District Court on the issue of validity and infringement, we think a more serious question is presented on the issue as to whether such infringement was wilful and wanton. On this issue, the burden was not upon the defendant Hoffman to prove exoneration but upon the plaintiffs to substantiate the charge. It has been held that a bona fide and reasonable belief that a patent was invalid removes the infringement from the class designated as wanton and wilful. Packwood v. Briggs & Stratton Corp., D.C., 99 F.Supp. 803, 808; Pennington Engineering Co. v. Houde Engineering Corp., D.C., 43 F.Supp. 698, 699, 707, affirmed 2 Cir., 136 F.2d 210. See also Associated Plastics Companies v. Gits Molding Corp., 7 Cir., 182 F.2d 1000, 1006.

The finding of the District Court on the issue under discussion is in substance that Hoffman was an agent of and selling plaintiffs' mop in the city of Chicago for practically two years prior to his commencement of the manufacture and sale of the accused mop, and that he commenced such manufacture and sale without giving notice to plaintiffs; that prior to the time when plaintiffs learned of Hoffman's activities they made a number of referrals of inquiries from prospective purchasers and salesmen; further, that Hoffman as an officer and general manager of Dayless Manufacturing Company directed its activities while still a trusted employee of plaintiff Artmoore Company, with full knowledge of the patent device in suit, and that plaintiffs did not know of such activities and of the relationship between Hoffman and Dayless Manufacturing Company.

Defendants challenge, and not without merit, the finding that Hoffman was an agent or employee of plaintiffs and assert that he was merely an independent contractor. In our view, however, it is not too important as to how Hoffman's relationship with the plaintiffs be characterized. It is not open to dispute but that Hoffman was granted a franchise by plaintiffs for an exclusive territory so that he might develop a clientele for the sale of mops. It is also plain that the dispute or friction which developed between the parties was due to the fact that other distributors of plaintiffs' mop invaded the territory which had been assigned to Hoffman. Hoffman naturally complained of this invasion of his territory, without any action being taken by plaintiffs. It was at this time or shortly thereafter that Hoffman commenced the manufacture and sale of the infringing mop.

The weakness of plaintiffs' position is accentuated by their argument in this court, predicated almost entirely upon an affidavit of Hoffman filed in opposition to a motion for preliminary injunction and introduced in the instant case by plaintiffs as Exhibit 17. The only statement in this affidavit referred to in plaintiffs' brief is as follows: "That at no time did affiant receive any information from the Artmoore Company concerning the names and locations of other franchise sales representatives or distributors for the Artmoore Company in other locations and areas."

■ Our attention is then called to testimony alleged to prove the falsity of the quoted statement. Assuming that which we think is doubtful, that is, that such falsity is shown, we are not able to discern its materiality. In fact, it is not contended that this alleged false statement bore any materiality to the issue of Hoffman's conduct. It is only utilized by plaintiffs to cast doubt or suspicion upon other portions of Hoffman's affidavit. For instance, it is argued that proof of a false statement by Hoffman in the respect shown raises a doubt or question as to the truthfulness of certain material statements found in the affidavit. Even if such be the case, the argument is of no benefit to plaintiffs. Certainly it cannot be thought that plaintiffs sustained the burden of proof by merely casting a doubt upon an exhibit which they offered. More than that, Exhibit 17 was offered by plaintiffs because of one statement, asserted as an admission against interest, to the effect that defendants manufactured and sold the accused mop. It was upon defendants' insistence that the entire affidavit was offered by plaintiffs, rather than the particular portion referred to. Under these circumstances we do not think plaintiffs can escape the undenied and unimpeached statements of Hoffman as contained in the affidavit. The affidavit is lengthy and we need not set it forth in any detail. It is sufficient to state that it contains a plausible and reasonable explanation of Hoffman's conduct. Among other things it shows that Hoffman after considerable experimentation designed the accused mop, that he consulted a named patent counsel (about whose qualifications there can be no question) for the purpose of ascertaining whether his newly designed mop was an infringement of any unexpired valid patents, and particularly the patent in suit. Further, it shows that in a report dated April 14, 1950, Hoffman was advised by his patent counsel that his construction did not infringe any valid claim of the patent in suit, and that it was only after such report that manufacture of the accused mop was commenced.

The record may furnish a basis for criticizing Hoffman. He no doubt would appear in a better light if he had notified plaintiffs of a severance of his relationship with them and of his plans to manufacture his own mop, but under the circumstances we do not think his failure in this respect constitutes wilful and wanton conduct. While there is proof that plaintiffs made a considerable number of referrals to defendants, there is no proof that they were actually received. Assuming, however, that such was the case from the fact that they were placed in the United States mail by plaintiffs, there is no proof that they were utilized by Hoffman. Furthermore, there is no proof that Hoffman sold or represented his mop to be that of plaintiffs, or that he practiced any fraud or deception. Plaintiffs' suspicion as to Hoffman's activities appears to have been further aroused from the fact that defendants did not call him as a witness at the trial. We see no reason, however, why defendants should have called Hoffman to testify in explanation of his conduct when that had been given in detail in his affidavit which had been introduced by plaintiffs.

■ While Hoffman's activities, as we have said, may constitute a proper basis for criticism—they may even raise a suspicion of improper conduct—yet we are of the opinion that they are grossly deficient as the basis for a finding or conclusion that they were wilful and

wanton, and particularly is this so when we remember that the burden was upon the plaintiffs to establish the charge.

That portion of the judgment adjudicating the validity of the claims in suit and their infringement by the defendents is affirmed. That portion of the judgment adjudicating wilful and wanton infringement is reversed, with directions that the accounting and further proceedings be had consistent therewith.