**The J. R. CLARK COMPANY and John R. Clark, Plaintiffs-Appellees,**

v.

**GEUDER, PAESCHKE & FREY CO., Defendant-Appellant.**

**No. 12301.**

United States Court of Appeals
Seventh Circuit.

Oct. 10, 1958.

As Corrected Oct. 16, 1958.

Maxwell H. Herriott, Gerrit D. Foster, Milwaukee, Wis., Paul R. Puerner, Milwaukee, Wis., Arthur H. Seidel, Milwaukee, Wis., of counsel, for appellant.

Andrew E. Carlsen, Minneapolis, Minn., Curtis B. Morsell, Milwaukee, Wis., Douglas L. Carlsen, Minneapolis, Minn., for appellees.

Before DUFFY, Chief Judge, and FINNEGAN and KNOCH, Circuit Judges.

DUFFY, Chief Judge.

This is a patent infringement suit. Claim I of Olander patent No. 2,663,102 is the only claim in issue.[1] This patent was granted December 22, 1953 on an application filed June 9, 1950. The District Court held that Claim I was valid and infringed.

The patent in suit relates to ironing tables and is particularly directed to the supporting structure for the table top. The evidence disclosed the well-known fact that hand-ironing is a very tiring and disagreeable task for the housewife. The fatigue factor which results from hand-ironing has been the subject of scientific studies, and the industry was greatly interested in any device that would make hand-ironing less arduous.

1. Claim I reads: In an ironing table having an elongated ironing board, a supporting structure for the board comprising a front leg member and a rear leg member respectively secured at longitudinally spaced points to the underside of the board and extending angularly downwardly to cross each other at a point above their longitudinal centers whereby the lower ends of the leg members will be spread further apart than their upper ends, said members consisting of single bars pivoted together at their intersection and with their parts above the intersection lying adjacent to the vertical longitudinal plane of one lateral edge of the board, and the lower ends of the leg members having rigid transverse extensions underlying the table to support the table against lateral tilting.

The principal reason why hand-ironing was so tiring was that the housewife had to stand while ironing, or sit on a high stool with her knees either spread apart or twisted to one side because of the interfering leg structure of the ironing table. There are some types of ironing where the housewife prefers to stand, but usually ironing can be more comfortably accomplished while sitting, provided the table can easily be lowered to a level where the housewife can work from an ordinary chair, and provided the supporting structure is so designed that she can sit with her knees in a normal forward position and with the surface of the table brought completely over her lap so she need not bend forward while working.

Attempts were made before Olander to design ironing tables for ironing in a sitting position as is shown in patents issued to Clark, No. 2,494,506; Krueger, No. 2,566,668 and Michelson, No. 2,011,-251. However, these patents did not solve the problem and there is no evidence that any tables or boards were constructed or sold which utilized the teachings of those patents.

The ironing table shown and described in the Olander patent in suit is known as Clark's Table No. 10, and is so constructed that it readily can be adjusted to various sit-down and stand-up positions to accommodate tall or short operators. The supporting structure includes pivotally connected single bar legs, the upper portions of which are disposed adjacent to the vertical plane of one lateral edge of the top. This provides knee and leg space and the top member can be positioned directly over the operator's lap. As the leg members are pivoted above their longitudinal centers, they span a wide floor area, and this forms a rigid supporting structure regardless of the elevation to which the table is adjusted. Another feature of the Clark Table No. 10 is that the entire supporting structure is collapsible flatly against the underside of the ironing table for shipment or storage.

Olander filed his application in June, 1950, and the corporate plaintiff[2] made immediate plans to go into production and build up an inventory. The ironing table was first displayed to the public at the National Housewares Exhibit held in Chicago in January, 1953. The President and the Sales Manager of defendant each saw and examined plaintiffs' table and caused one to be purchased by defendant.

The design engineer of defendant was instructed to build an ironing table in competition with Clark's Table No. 10. The ironing table which was thereafter developed by defendant was known as Model C–690. Starting in June, 1953, this table was widely advertised, and was first sold by defendant in October, 1953. In its advertisements appearing in nationally distributed publications, defendant's Model C–690 was described as "sensational" and as a "radically new design." Model C–690 became defendant's most popular table in its high-priced line and completely displaced defendant's previous deluxe ironing table Model C–680. The accused structure is defendant's Model C–690.

Clark's Model No. 10 embodied the structure defined by Claim I. It also incorporated a diagonally crosswise leg structure contained in plaintiffs' companion patent, Olander No. 2,663,101 which was issued the same day as the patent in suit. This new model met with great commercial success. By September 30, 1956, more than a million of such ironing tables had been sold. For the first fiscal year after Model 10 was placed on the market, the sales were four times as great as the number of plaintiff's sales of its previous deluxe ironing table for a like period. Furthermore, Model 10 sold at a considerably higher price than any previous model of ironing table sold by plaintiffs.

Defendant argues that Claim I is invalid in that it reads upon the prior art

2. Hereinafter, a reference to plaintiff will mean the corporate plaintiff.

and the Mary Proctor ironing table. The Mary Proctor Hi-Lo sit-down or stand-up ironing table was made by Proctor Electric Company and was offered for sale August 25, 1949. The principal prior art relied upon by defendant is Lowenberg Patent No. 1,976,031.

Lowenberg is a file wrapper reference and was considered by the patent office examiner. Lowenberg was a combination card table and bedside table. This structure was not intended as a solution of the problems involved in ironing clothes. The legs of the Lowenberg table are not pivotally connected at points above their longitudinal centers. These legs are not collapsibly arranged to perform the functions required in an ironing table. We agree with the District Court that the examiner who allowed the claim in suit was correct in rejecting Lowenberg as not being a pertinent reference.

We likewise agree with the statement of the District Judge that the Mary Proctor ironing table "not only does not suggest the invention of the patent in suit, but that as far as the structure defined by the Olander claim is concerned, the Mary Proctor ironing table is substantially identical with the Hild patent, No. 2,546,097, which the examiner considered and rejected, and is substantially identical with the Model C–680 ironing table which defendant previously sold and which was displaced by the infringing Model C–690 ironing table." This statement is substantially correct in spite of the fact that the legs of the C–680 table are located on center and the legs of the Mary Proctor table are located off center.

The claim in suit was allowed over the following prior art cited by the examiner: Tucker, 264,049; Northrup, 1,161,407; Reed, 1,359,527; Gomber, 1,801,151; Lowenberg, 1,976,031; Miller, 2,517,696; Hild, 2,546,097.

In addition to Lowenberg, defendant now cites and relies upon Busch No. 863,150 and Pope No. 1,098,682. We think Busch and Pope are no more pertinent to the invention shown by the claim in issue than references of record in the Olander file wrapper.

Oral testimony on the trial emphasized that Clark No. 10 Table which embodies the teachings of Claim I, was new and novel, and was a contribution to the art. Kleinsorge, who had forty years' experience in the ironing table business and was not connected with either party, testified that the present invention was a "tremendous step forward in solving the problem," and that "it jarred the entire industry when they saw this table. I know it did me." Even defendant's sales manager, Stephany, testified: "I recall that it was one of the probably outstanding ironing tables or new ideas in ironing tables." Stephany also admitted that Clark Table No. 10 " * * * may have speeded up our thinking on the problem * * * defendant had never thought of the C–690 until after we saw the Clark exhibit at the January 1953 Show."

We need say nothing further as to the prior art except to quote with approval Finding of Fact 23: "None of the prior art disclosures here in evidence in any way anticipates, nor does it show lack of invention in, the structure defined by Claim I of the patent in suit, nor would any of such disclosures have suggested the improved ironing table of said Claim I to a person skilled in the art at the time of the invention thereof by Olander."

The District Court found there was no file wrapper estoppel. On this appeal, defendant says it is not claiming file wrapper estoppel but does urge that the presumption of validity of Claim I does not apply to the Lowenberg file wrapper reference because of the conduct of the patentee in the prosecution of the application. Olander had rewritten Claim 15 as Claim 34 which claim, in turn became Claim I in suit. Defendant urges in effect that Claim I was allowed by oversight of the examiner. We think the prosecution of the Olander application followed normal procedure. There is nothing to indicate the examiner was not fully cognizant of the scope of Claim I.

We now reach the question of alleged infringement. Defendant brought out its table, C–690, only after its principal officers and certain of its employees had the benefit of a detailed inspection and study of plaintiff's Table No. 10. It is quite apparent that defendant endeavored to invent around the invention disclosed in the Clark Table. That defendant succeeded to a considerable degree may be inferred from the fact that of the sixteen claims of the patent in suit, only Claim I is alleged to be infringed by defendant's table.

Defendant's argument that Claim I was not infringed revolves about the word "adjacent" as used in said Claim, to-wit: " * * * said (leg) members consisting of single bars pivoted together at their intersection and with their parts above the intersection lying *adjacent* to the vertical longitudinal plane of one lateral edge of the board * * *." Defendant argues that "adjacent" means "touching" and explains that in its structure there is a space of one inch between the outer edge of its board and the front leg of defendant's table.

Defendant urges that the word "adjacent" must be interpreted in the light of the specification. We find in the specification that the main position of the front leg 17 is described as being "in a vertical plane substantially coincident with the outer lateral edge of the board 16." Defendant strongly insists that the space of one inch between the leg member and the outer edge of its table prevents it from being "adjacent" or "substantially coincident" with said vertical plane.

The question of infringement is closer than the question of validity. However, we have concluded that the District Court was correct in its finding of infringement. A significant part of the specification hereinbefore described is the word "substantially." There is certainly more flexibility in the words "substantially coincident" than if the word "coincident" had been used alone.

Dimensions are not given in the patent, but in Clark Table No. 10 which is proportionately the same as in the patent drawing, the top is fourteen and a half inches wide, and the two single bar legs are of such thickness and so located as to leave eleven and a half inches of knee room under the operator's side of the board. In defendant's table, C–690, the leg bars are set in one inch from the front edge of the board, but a fifteen inch top member is employed. The result is that there are eleven and one-eighth inches of knee room for the operator. Practically the same result is achieved for there is only three-eighths of an inch difference in knee room or leg space between the two tables.

Pertinent here is language in the Supreme Court opinion in Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., 339 U.S. 605, 607, 70 S.Ct. 854, 856, 94 L.Ed. 1097:

"Outright and forthright duplication is a dull and very rare type of infringment. To prohibit no other would place the inventor at the mercy of verbalism and would be subordinating substance to form. * * *"

The opinion continues, 339 U.S. at page 608, 70 S.Ct. at page 856:

"The doctrine of equivalents evolved in response to this experience. The essence of the doctrine is that one may not practice a fraud on a patent. * * * 'To temper unsparing logic and prevent an infringer from stealing the benefit of an invention' a patentee may invoke this doctrine to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.' "

We think there is substantial evidence to sustain the finding of the District Court that defendant's Model C–690 ironing table embodies many of the structural and functional advantages set forth in the Olander patent. The trial court was justified in finding that they are the same in essence and substance and consequently that Model C–690 ironing table infringes the claim in suit. Judgment

Affirmed.