**ELGEN MANUFACTURING CORPORATION, Plaintiff-Appellee,**

v.

**GRANT WILSON INCORPORATED, Defendant-Appellant.**

**No. 13031.**

United States Court of Appeals
Seventh Circuit.

Jan. 18, 1961.

Rehearing Denied Feb. 14, 1961.

John Rex Allen, Stanley C. Dalton and Hofgren, Brady, Wegner, Allen & Stellman, Chicago, Ill., for appellant.

Charles J. Merriam and Norman M. Shapiro, Merriam, Smith & Marshall, Chicago, Ill., of counsel, for appellee.

Before DUFFY, SCHNACKENBERG and KNOCH, Circuit Judges.

DUFFY, Circuit Judge.

This is a suit for alleged infringement of two patents. One is Goldsmith Patent No. 2,777,573, applied for September 13, 1955 (a division of original application dated January 4, 1954) and issued January 15, 1957. Claim 1 is charged to be infringed. This patent is called the "product patent", and is directed to a coil of flexible duct connector material.

The second patent is Goldsmith Patent No. 2,825,384, entitled "Method and apparatus for securing metal strips to fabric." Application was filed January 4, 1954, and the patent was issued March 4, 1958. This patent is directed to the method of making a coil of flexible duct connector material and the apparatus used in practicing the method. Claims 7, 8, 14, 15, 17, 18 and 19 are charged to be infringed. Defendant denies infringement of this patent.

In sum, the claimed inventions in suit relate to a prefabricated coil product for use in making duct connections in heating and ventilating systems and a machine and method for making same.

In the air heating and ventilating industry it is common practice to have a series of connected metal air ducts which extend from the blower unit of a furnace or ventilating unit to a desired air outlet. If these ducts are rigidly attached to each other, noise and vibration will result. For some time past it was the standard practice to place a flexible duct connector between the ducts in order to reduce vibration and other noises.

The flexible duct connector usually was made from a strip of fabric of either canvas or asbestos. Prior devices were customarily made by sheet-metal workers. The practice was to cut two strips from metal stock and then cut a strip of canvas or asbestos of the same length. One edge of each metal strip was bent in a metal-bending machine. An edge of the fabric was inserted in each of the bent-over channels, and in a series of steps, the fabric was secured to the metal. There was thus formed metal strips of equal length separated by fabric of the same length which fabric was joined with the metal strips at their inside marginal edges.

There were several advantages in having Goldsmith's prefabricated product in a coiled form. A strip of duct material fifty or one hundred feet in length, if coiled, could be stored easily in a limited space. It could be more easily handled. The exact length of connector could be cut from the coil thus eliminating waste.

An existing type of roll-forming machine was obtained by Goldsmith. He modified the machine in various particulars. One modification permitted the simultaneous handling of two strips of sheet metal. The modifications included the adaptation of a roll-forming machine so that for the first time, fabric was attached simultaneously to one edge only of each metal strip, while the strips were being moved in parallel relationship with each other and with the other longitudinal edge of each metal strip clear of the roll-formers. During the trial, this was referred to as a "dangling edge."

Goldsmith discovered that if he produced prefabricated material in a long, flat piece, and then attempted to coil the material, the product buckled and wrinkled severely, so much so the product would be unmerchantable. Goldsmith was not a trained engineer, but he did discover that if the prefabricated product were drawn under tension from the forming machine on to a coiling reel, a coil of material could be produced which was unwrinkled. Claim 8 of Patent No. 2,825,384 claims an apparatus as recited in Claim 7 in which a constant torque is applied to the coiling reel. In a machine built under the teachings of Patent No. 2,825,384, the coiling reel is provided with a variable speed reducing device so that the coiling reel at all times rotates at a speed which prevents a sag in the material coming to the reel.

After completing his machine and having successfully made a coil of unwrinkled material, Goldsmith sought financial

backing. One of the first whom he approached was defendant. A sample of Goldsmith's pre-formed connector duct material was left with defendant, but the latter advised there would be no market for such a product.

In the latter part of 1953, Goldsmith obtained backing from the plaintiff herein, and production of the duct material was commenced. In less than a year, plaintiff sold more than $164,000 of the coiled connector duct material which was sold under the name of "Silent Duct", plaintiff's trademark for the coiled duct material product made under the Goldsmith patents. In the following 4¾ years, the plaintiff sold over $1,600,000 of the coiled material.

In 1954, after defendant learned of the marketing of plaintiff's "Silent Duct" it began a research program to find a different method to make a pre-formed connector duct material. It tried to stitch the metal strips to the fabric tape, but this failed. It tried the use of pressure-sensitive adhesive to join the fabric to the metal strips, but this was unsuccessful. Defendant then asked assistance from a Mr. Samson who was defendant's expert at the trial, and while defendant claims it did not seek to duplicate plaintiff's product, the first letter from Mr. Samson listed as the subject thereof, "Silent Duct."

In the District Court, one of the disputed facts was whether Samson's work for defendant was with full knowledge of plaintiff's product, "Silent Duct." Although the trial court did not think the matter was of great importance, it did find Samson's work in producing "Vibra-Stop" for defendant was with full knowledge of plaintiff's "Silent Duct."

The District Court held the claims in issue in Goldsmith Patent No. 2,825,384 (machine and method patent) to be valid and infringed. It also held Claim 1 of Goldsmith Patent No. 2,777,573 (product patent) to be valid and infringed. Largely because defendant brought its product on the market only after advice of counsel, the Court held the infringements were not wilful and wanton.

The District Court found that the product produced under Patent No. 2,777,573 was new and satisfied a long-felt want. It held there was invention in the coiled product, and this was disclosed in the original Goldsmith application.

A physical fact which is extremely important in this case is that when a product is made in the manner of "Silent Duct" having two elongated over-lapped metal strips and which is rolled in a coil, the outermost metal strip must be longer than the innermost strip. This is necessarily so because with each revolution of the coil, the outer metal strip has a greater circumference—a greater distance to travel. By measurement taken in a courtroom demonstration using defendant's product, it was established that in a fifty-foot strip of defendant's product which had been in a coil, the outermost metal strip was two inches longer than the innermost strip.

Goldsmith was aware of the necessary difference in lengths of the metal strips when the product was coiled. In a letter to the Patent Office in June of 1955, he explained how the undesirable wrinkled product must be avoided.

The discovery that Goldsmith made was that if he used a coiling reel which placed a tension on the material coming from the machine, the buckling of the metal strips and the wrinkling of the fabric would be avoided. A constant torque was applied by Goldsmith to the coiling reel, and this brought about the unforeseeable result of no buckling of the strips and no wrinkling of the fabric. What actually occurs is that the tension causes a slippage of one metal strip so that it travels through the machine at a slightly faster speed than the other. The fabric immediately attached to the faster-traveling strip stretches to accommodate this difference in length, and a wrinkling of the fabric is avoided.

There seem to be two aspects of slippage which occurs. Both experts testified because of variations in the metal material, one strip of metal might travel through the machine faster than the other. This was irrespective of any

coiling device. Plaintiff sought to prevent this slippage by using positively driven pressure rolls. Defendant used its brake.

The inventions of the patent in suit are concerned with the second aspect of slippage. If the metal strips were of the same length with each other and with the fabric material, and were rolled into a coiled form, the strips buckled and the fabric wrinkled. But when the strips and fabric came to the coiling device under tension, for some reason, probably then unknown to Goldsmith, the desired result was obtained. It was Goldsmith's teaching of use of a constant torque from the coiling reel that brought the unexpected but happy solution to a perplexing problem. We know now that the tension from the coiling machine caused a small amount of slippage (2 inches in 50 feet), but it was sufficient.

■ Defendant argues that Goldsmith did not explain in the patent what happened when the constant torque was applied. Conceding that to be true, it would not be fatal to the validity of his invention. In the landmark case of Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527, which involved a rubber carriage tire, a "tipping capacity" of the tire became the pivot of the controversy. The defendant argued that this tipping capacity was not recited in the specifications of the patent and was, in fact, unknown to the patentee. The Court stated at page 435 of 220 U.S., at page 447 of 31 S.Ct. "It is certainly not necessary that he understand or be able to state the scientific principles underlying his invention * * *. It is no concern of the world whether the principle upon which the new construction acts be obvious or obscure, so that it inheres in the new construction." The court upheld the patent.

We hold that the plaintiff's patents in suit were not invalid because plaintiff may not have fully explained in the specification that by applying the torque to the coiling reel, the outermost metal strip would travel faster and the fabric immediately attached would stretch. Goldsmith did discover a method whereby the product came from the machine free from wrinkles and the metal strips did not "buckle or bow." The patent adequately disclosed how to put this discovery into practice.

Defendant attacks Patent No. 2,825,-384 on several additional grounds. The principal emphasis is that the claims in issue are invalid for lack of invention over prior art that was not before the Patent Office. The patents specified by defendant are Balfe Patent No. 2,346,-347, Bosley Patent No. 554,907 and Cody Patent No. 1,736,770.

■ The Balfe, Bosley and Cody patents were in the same class and subclass in the Patent Office in which Goldsmith Patent No. 2,825,384 is officially classified. The examiner had ready access to this art. The first search which an examiner makes is through the patents in the class and subclass in which the subject matter claimed belongs. We must conclude the examiner reviewed these patents and discarded them. Artmoore Co. v. Dayless Mfg. Co., 7 Cir., 208 F.2d 1, 4.

In our view the Balfe, Bosley and Cody patents do not meet the invention singly. None of these references shows an overlap of metal pieces with a dangling edge on each. Defendant has not suggested how anyone skilled in the art could have combined any two or more of these references to obtain the result disclosed by the Goldsmith patent.

■■ The District Court found defendant's machine and method different only in unimportant details from Goldsmith Patent No. 2,825,384. There is substantial evidence to support that finding. As we sustain the District Court's findings and conclusions as to the validity of the claims in issue in Patent No. 2,-825,384, we also sustain the findings and conclusions of infringement.

For the reasons hereinbefore stated, we hold that there was invention in the coiled product (Patent No. 2,777,573) and sustain the District Court's findings in that respect. We also agree with the

Court that there was infringement by the defendant.

We have considered the other objections made by the defendant as reasons for reversal, but we hold them to be without merit, and in these respects, sustain the findings and holding of the District Court.

Judgment affirmed.