**BISSELL INC., Plaintiff,**

v.

**E. R. WAGNER MANUFACTURING COMPANY, Wagner Products Corporation, and Glamur Products, Inc., Defendants.**

**Civ. A. No. 61-C-88.**

United States District Court
E. D. Wisconsin.
May 8, 1962.

Elwin A. Andrus and Eugene R. Sawall, of Andrus & Starke, Milwaukee, Wis., for plaintiff.

James P. Brody, of Foley, Sammond & Lardner, Gerrit D. Foster and Paul R. Puerner, of Michael, Spohn, Best & Friedrich, Milwaukee, Wis., for defendants.

GRUBB, District Judge.

This action arises under the patent laws of the United States. Plaintiff, Bissell Inc. (hereinafter referred to as "Bissell"), is a Michigan corporation having its principal place of business at Grand Rapids, Michigan. It is the owner by assignment of Patent No. 2,975,462 (hereinafter referred to as Patent '462) and Patent No. 2,976,559 (hereinafter referred to as Patent '559). Defendants, E. R. Wagner Manufacturing Company and Wagner Products Corporation, are Wisconsin corporations having their principal place of business at Milwaukee, Wisconsin. Defendant, Glamur Products, Inc., is a New York corporation with an office in Milwaukee, Wisconsin. E. R. Wagner Manufacturing Company wholly owns Wagner Products Corporation and owns a majority of the stock of Glamur Products, Inc.

Following trial on affidavits and oral testimony, Bissell's motion for a preliminary injunction to restrain the alleged infringement of certain claims of one of the patents in suit was denied on July 7, 1961. Thereafter, and prior to the final trial of the case, the parties stipulated as follows:

Plaintiff would rely solely upon claims 3, 8, 13, and 15 of Patent '462, and upon claims 8 and 11 of Patent '559 at the final trial.

Defendants would rely solely upon the following defenses at said trial:

1. That claims 3, 8, 13, and 15 of Patent '462 and claims 8 and 11 of Patent '559 are invalid as lacking patentable invention over the prior art under § 103, Title 35 U.S.C.

2. That claims 3, 8, 13, and 15 of Patent '462 and claim 11 of Patent '559 are invalid for aggregation.

3. That claims 8 and 11 of Patent '559 are invalid for double patenting.

4. That claim 8 of Patent '559 is not infringed.

5. That Bissell has misused its patents and has unclean hands.

Bissell denies the charge of patent misuse and unclean hands, and further asserts that in any event it has purged itself therefrom.

The parties further agreed that there is an issue as to the date of the commencement of any liability for damages.

The issue of damages was severed prior to final trial of the case. In addition to the evidence adduced at the trial, the court's findings and conclusions as set forth hereafter are based on the evidence offered on the motion for preliminary

injunction and on certain affidavits which were received by agreement of the parties after conclusion of the trial.

## PATENTS IN SUIT

The patents in issue relate to an apparatus for applying detergent to rugs and the like, commonly called a rug shampoo applicator.

### Patent '462

The device (hereinafter also referred to as the "Bissell applicator") disclosed by the claims in issue of this patent consists of the following elements:

1. A body member of laterally spaced walls with a downwardly spaced channel housing.

2. A handle, connected to said body member, provided with a hand piece.

3. A liquid receptacle connected to the body member.

4. A longitudinally extending discharge conduit located in the body member.

5. An inlet to said discharge conduit in connection with the liquid receptacle.

6. A spring-seated valve for said inlet.

7. Means for manually controlling the spring-seated inlet valve with a finger piece positioned adjacent the hand piece of the handle.

8. An elongated cylindrical roller of resiliently compressible synthetic spongy material surrounding a rigid core. Said roller is rotatively mounted in substantially fixed bearings on the body member and positioned in noncontacting relation to the discharge conduit located in said body member.

9. Elongated, resiliently yieldable brushes supportedly mounted on the body member and having downwardly extending bristles. The brushes are positioned in a lateral noncontacting relation to the roller, sufficiently spaced to engage the nap surface in the path of the roller during manipulation of the apparatus without direct interference with the roller.

In carrying out the purpose of the apparatus disclosed in Patent '462 as set forth in the claims in issue of said patent, the roller receives the liquid detergent mix in controlled amounts through the discharge conduit from the liquid receptacle. The spongy, resiliently compressible material of the roller aerates the liquid absorbed by it to foam, generating said foam on deformation of the roller under pressure contact with the nap surface of the rug. The roller progressively produces foam and discharges same when rolled back and forth over the given surface under pressure from the upright handle and the weight of the device. The brushes located on either side of the roller control the deformation thereof by assuming part of the load of the device and thereby modify the foam generating function of said roller. The brush located in front of the roller conditions the nap of the rug for receipt of the foam, and the brush following the roller assists in working the foam into the nap surface.

The elements of the Bissell shampoo applicator thus interact and cooperate to accomplish the function of progressively producing detergent foam and applying the same uniformly to a surface to be cleaned with rapid distribution of the foam for the purpose of cleaning the surface without excessive moisture penetration of the rug.

### Patent '559

The claims of Patent '559 in issue specify improvements in an apparatus for applying shampoo to rugs to attain certain manufacturing economies and to provide improved operation thereof.

Claim 8 defines a rectangular frame, removably mounted and carried by the end walls of the channel housing of the body member. The brush means of the device are carried by the sides of said removable frame, and the cylindrical roller is rotably carried by bearing supports in the ends thereof, generally parallel and between the brushes.

Claim 11 of Patent '559 positions the roller of the apparatus so that it normally extends downwardly beyond the bristle tips of the brushes to cause the partial

compression of the roller before the bristles make contact with the rug. Claim 11 further specifies the securement of the rigid handle to the body member of the apparatus to provide tilting control upon the roller and brush treatment of the rug.

## VALIDITY

Defendants contend that all claims in issue of Patents '462 and '559 lack patentable invention over the prior art under § 103 of Title 35 U.S.C. This section requires nonobviousness of the subject matter as a condition for patentability. A patent may not be obtained where

" * * * the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * "

*Prior Art*

Prior art patents cited by defendants in connection with Patents '462 and '559 are cited in the margin.[1]

*Prior Art as to Patent '462*

Defendants rely principally on Davis, Dixon, Lichter, Rosen, Mitchell, and Abdo as pertaining to Patent '462.

Dixon, Rosen, Mitchell, and Abdo may be described generally as handle-operated, valve-controlled fountain type scrubbing brushes. Abdo, additionally, uses a synthetic sponge block located between two brushes and recessed from the plane of contact with the surface to be treated.

Davis is a fountain brush for painting and whitewashing, employing a roller with a brush on either side. The roller consists of a hollow, revolving cylinder covered with suitable cloth for the absorption of paint or whitewash and for leaving same upon the surface over which the device is passed. The brush following the roller smoothes off any of the applied material unevenly remaining upon the surface.

Lichter is a floor polishing device employing a fountain supplied roller of felt or other absorbent yielding material which serves as a medium for distributing the oil or other polishing liquid in frictional contact with a surface.

Additionally, the Bathurst patents, Sporer, Hodschar, Saffioti, and Elvy are cited as defining rollers having a foam-producing and applying capacity when supplied with an appropriate liquid. The Bathurst patents are for a combination mop, scrubber, and wringer. They employ a tubular mop of porous, resiliently compressible material such as cellulose

| 1. Number | Patentee | Issue Date |
|---|---|---|
| 69,901 | J. Davis | 1867 |
| 420,035 | H. Dixon and H. S. Kopp | 1890 |
| 920,136 | C. H. Henning | 1909 |
| 1,111,697 | R. Lichter | 1914 |
| 1,221,324 | F. Hodschar | 1917 |
| 1,461,947 | P. Sporer | 1923 |
| 1,714,497 | J. H. Codrick | 1929 |
| 1,913,183 | J. W. Wolfe | 1933 |
| 2,243,607 | S. Rosen, et al. | 1941 |
| 2,632,583 | W. M. Allen | 1953 |
| 2,633,590 | B. A. Mitchell | 1953 |
| 2,653,337 | T. T. Bathurst | 1953 |
| 2,845,644 | J. A. Wisner | 1958 |
| 2,935,754 | R. J. Abdo, et al. | 1960 |
| | (This is not prior art, but a device, constructed in accordance with the Abdo patent, antedates the invention in suit.) | |
| 2,642,601 | R. P. Saffioti | 1953 |
| 2,695,417 | T. T. Bathurst | 1954 |
| Br. 741,820 | J. F. W. Elvy, et al. | 1955 |

sponge or air foam rubber, compressible for the purpose of squeezing out cleaning fluid and for picking up dirt particles in rolling or sliding contact with the surface to be cleaned.

Sporer discloses a window-washing device having a roller which serves as the washing element. This roller is covered with sponge or other material and is located between two squeegees.

Hodschar is a wet cleaning attachment for carpet sweepers. It employs a rotably mounted, liquid-distributing roller having a surface of some absorbent material which will absorb the liquid from its feeding mechanism and distribute the same upon the carpet. The device may be operated in conjunction with a rotary carpet sweeper or with a carpet brush for renovating the carpet simultaneously with the sweeping or brushing operation.

Saffioti employs a sponge covered cleaning roller in contact with a rug surface, and Elvy describes a sponge roller made from synthetic foam rubber for washing, cleaning, or polishing floors.

### Prior Art as to Patent '559

Defendants rely on Henning and Abdo as most pertinent to the removable frame subassembly of claim 8, and on Sporer and Wisner as to the positioning of the roller defined in claim 11.

Henning employs a removably mounted rectangular frame within a truck frame in a rug scrubbing apparatus. Said removable frame carries a cylindrical brush on bearings and indirectly carries a roller of sponge or other absorbent material.

Abdo, described above, has a rectangular, removably mounted member carrying the downwardly extending brushes and blocklike sponge. The removable frame consists of a block which is screwed into the channel housing of the body member.

Additionally, defendants cite Davis and Allen as having rectangular frames, the sides of which rotably carry a roller by bearing supports, and said frames being removably carried by bails attached to the handles of the respective devices.

Sporer, described previously in connection with the claims of Patent '462, shows a spring loaded, resilient, compressible sponge roller normally projecting beyond the edges of the squeegees. Wisner discloses a combination brush and sponge with the sponge extending downwardly below the tips of the bristles.

### Contemporaneous Developments in the Art Re: Patent '462

Two instances of independent, contemporaneous developments in the field of rug cleaning by means of rug shampoo applicators employing synthetic foam-covered rollers have been cited.

In 1956, and prior to the first public disclosure of the patented Bissell applicator, Robert W. Linenfelser developed a device and disclosed a model thereof to his patent attorney. This device employs two polyurethane foam-covered, liquid-containing rollers with a brush unit disposed parallel and between said rollers in a unitary housing structure. The peripheries of the rollers engage the bristles of the brush in frictional contact to produce copious foam of liquid detergent to be applied to the surface to be cleaned. A handle is secured to the center of the top plate of the housing structure by means of a tubular handle holder.

Also in 1956, P. W. Buechler made several proposals for a rug shampoo applicator as an assignment for his employer, Harley Earl, Inc., an industrial design firm located in Warren, Michigan. One of the several suggestions described a foam-covered roller which is to be a container from which its contents are metered by triggered action into the foam material and thence dispersed evenly over the carpet as it rolls. The roller might be a separate unit or combined with a scrubbing brush on its opposite side for light scouring.

Another of Buechler's suggestions specifies two or more foam-covered rollers operating in pairs. Bristle or combination foam and bristle might be used on the rollers. Cleaner, carried in a con-

tainer on the back of the applicator, would be metered to the rolls.

*Commercial Usage of Prior or Contemporaneous Rug Cleaning Devices*

Linenfelser marketed liquid shampoo together with a long-handled brush for cleaning rugs during the depression. In the early 1950's, he also sold a cellulose sponge together with capsules containing concentrated detergent, and a cellulose sponge impregnated with detergent and mounted in a long-handled holder to be dipped in water.

A rug and floor brush by Master Manufacturing Company, constructed similarly to the apparatus of the Mitchell patent, was sold as early as October 1956. Sales of this device continue to the present time. No statistics as to the sales volume of the Master's device or the various Linenfelser products described above were offered.

The Linenfelser device, described as contemporaneous art, used as a dipper rather than as a liquid-dispensing roller, was marketed in 1958 or 1959. According to its developer, this apparatus had a sale of 50,000 units in 1960 at $5.95 per unit, primarily by direct sales to consumers by demonstration marketing.

Another commercial product is the "Magic Carpet Brush" made in accordance with the Abdo patent. To date of trial, about 60,000 units had been sold at a suggested retail price of $9.95 through many outlets but with modest advertising efforts.

*Additional Facts Relating to the Art of Home Carpet Cleaning and Certain Commercial Practices in the Art*

The use of wall-to-wall carpeting in homes is prevalent and has increased during the last forty years. Foaming detergent liquids have been in use for many years. Synthetic, polyurethane foam material has been available at least subsequent to 1953.

Since it entered the market of rug shampoo applicators in 1957, plaintiff has sold in excess of 3,000,000 applicators as

of June 1961. Its device has found approval by unbiased opinion in the field. Bissell spends approximately 15 per cent of its gross sales revenue on advertising of the device.

Prior to issuance of the patents in issue, Bissell followed the practice of offering several of its models, either packaged together with its shampoo or with the requirement that its immediate customers purchase the applicator and shampoo on a one-for-one unit basis.

The January 1, 1961, Bissell price lists to dealers, department stores, variety chain stores, and janitor suppliers offered individually packaged shampoo applicator models but required said customers to order one case of any size rug shampoo with each six Shampoo Masters. The price list to special accounts contained no shampoo purchase requirement but offered several combination packages as well as one model packaged individually.

Bissell's July 1, 1961, price lists to wholesale distributors, dealers, and department stores required said customers to order one can of any size rug shampoo for each of the several models offered. New price lists were printed on July 20, 1961, omitting the shampoo purchase requirement but otherwise identical to the prior lists.

Two communications from Peter J. King, Bissell's vice president in charge of marketing, to Bissell's sales representatives and sales outlets on September 14 and 15, 1961, respectively, call attention to Bissell's discontinuance of the practice of requiring shampoo purchases in order to obtain sheet prices quoted.

Price lists to department stores, effective October 2, 1961, omit mention of any required purchases of shampoo and list all models of applicators as packaged individually.

Bissell's January 15, 1962, price lists to wholesale distributors and dealers offer one model in packaged combination with a 22 ounce container of Bissell shampoo

at one quoted unit price and other discontinued models on an individual basis.

Bissell also engaged in cooperative advertising practices whereunder it reimbursed local advertising expenditures for Bissell products on the stated condition that no competitive products would appear in the same layout, with a maximum allowance for advertising containing all three of the following Bissell products—the carpet sweeper, rug applicator, and rug shampoo. The cooperative advertising scheme shows minor variations in terms until its discontinuance on October 2, 1961.

Further, Bissell observed a policy of bonus benefits for combination purchases of applicators and shampoo in the form of reduced prices or free shampoo.

The average gross margin of profit on Bissell's shampoo for the first nine months of 1961 was 53.46 per cent.

Bissell conditions the "guarantee" of the efficiency, durability, or cleaning results of its applicators on the use of Bissell shampoo.

Defendants developed the accused applicator which is a copy of the device disclosed by the claims of Patents '462 and '559, with the exception of the location of the bearing support of the roller and with a nonconfusing general appearance in 1958 while in possession of a commercial model of the Bissell applicator. They entered the market in competition with Bissell early in 1959 and engaged in successive price cuts which required Bissell to drop the selling price of its applicator very close to the direct cost of manufacturing the device.

Defendants have sold their applicator in combination with their shampoo, in one instance offering a combination of applicator and one-half gallon of shampoo from July through December 1960.

Rug shampoos presently on the market are not of uniform qualities. Some are acceptable for use with shampoo applicators from the standpoint of cleaning efficiency and use with the device without deleterious effects thereon; others are not.

Both parties indicate on the packaging of their devices that they are to be used with their respective cleaning products. Defendants designate their applicator as the "Most Revolutionary Carpet Cleaning Combination Known Today." Other rug cleaning devices, such as the "Magic Carpet Brush," condition the "guarantee" against deterioration of the apparatus on use of a named cleaning fluid.

### Legal Standards for Determining Validity

■■ Standards for determining patentability of a combination patent under § 103 of Title 35 U.S.C. are set forth in Armour & Co. v. Wilson & Co., Inc., 274 F.2d 143 (7th Cir., 1960). The state of the prior art and its uses and the nature of the improvement over the prior art present factual questions. The classification of the improvement as constituting invention by application of the legal criteria set forth in the statute to the underlying factual determinations is a question of law.

■ Recourse is had to the prior art to determine whether or not said references individually or in combination teach or suggest the combination and accomplishments of the subject matter of the claimed invention. Application of Gruskin, 234 F.2d 493, 43 CCPA 962 (1956); In re Milne, 140 F.2d 1003, 31 CCPA 918 (1944).

■ The prior art is to be evaluated in light of the knowledge of the art at the time the invention was made and is not to be considered as to what it might have taught or what might be accomplished in light of its teaching by a present day expert, adding present day knowledge. Texas Co. v. Globe Oil & Refining Co., 112 F.Supp. 455 (N.D.Ill.1953), aff'd 225 F.2d 725 (1955).

The following principle stated in Topliff v. Topliff and another 145 U.S. 156, 161, 12 S.Ct. 825, 36 L.Ed. 658 (1892),

has been followed consistently by the courts:

"* * * It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions."

See Young Radiator Co. v. Modine Mfg. Co., 55 F.2d 545, 547 (7th Cir., 1931), and Copease Manufacturing Co., Inc. v. American Photocopy Equipment Co., 298 F.2d 772 (7th Cir., 1961) (involving a combination patent).

The rule for patentability under § 103 of Title 35 U.S.C. has recently been stated as follows in Minneapolis-Honeywell Regulator Co. v. Midwestern Instruments, Inc., 298 F.2d 36, 38 (7th Cir., 1961):

"This Court has often applied the well-established rule of law that a novel combination of elements, whether all new, or all old, or partly new and partly old, which so cooperate as to produce a new and useful result or a substantial increase in efficiency, is patentable. (Citations omitted.)"

Accord: Copease, supra; Zegers, Inc. v. Zegers, 299 F.2d 769 (7th Cir., 1962); J. R. Clark Co. v. Geuder, Paeschke & Frey Co., 159 F.Supp. 948 (E.D.Wis. 1957), aff'd 259 F.2d 737 (1958), cert. denied 359 U.S. 914, 79 S.Ct. 587, 3 L.Ed. 2d 576 (1959).

Factors to be considered in the determination of obviousness were stated in the Copease case, supra, 298 F.2d at page 781, citing the following from Reiner v. I. Leon Co., Inc., 285 F.2d 501, 504 (2d Cir., 1960):

"* * * how long did the need exist; how many tried to find the way; how long did the surrounding and accessory arts disclose the means; how immediately was the invention recognized as an answer by those who used the new variant?
* * *"

*Patent '462*

Based on a consideration of the evidence of the prior art, the court finds that the references, demonstrations, and testimony do not establish that said art taught or suggested the structural combination of elements and its functions defined in claims 3, 8, 13, and 15 of Patent '462.

The liquid-distributing rollers of Davis, Lichter, Hodschar, Sporer, and Bathurst did not teach the progressive generation of liquid detergent foam by aeration on deformation. The demonstrated inherent capacity of these rollers to place foam upon a carpet when supplied with a liquid detergent, or to aerate said detergent liquid as in the case of the felt-covered roller of Sporer, is not suggested by construction of these rollers or by the functions they performed in the prior art, such as the application of paint, polish, cleaning liquid to carpets or glass panes, and removal of dirt particles by a vacuum principle. The court notes the ready-foaming capacity of the liquid detergent mix itself, as shown on the trial by the foaming action of said liquid on agitation in the transparent tank of one of the exhibits. The potential uses of prior art rollers, even when considered in the light of knowledge of foaming detergents and of spongy material such as polyurethane, fall short of indicating the controlled foam generation of the roller of Patent '462 functioning in combination with spaced and resiliently compressible brushes which modify the deformation of said roller.

The combinations of rollers and brushes in Davis and Hodschar do not teach or suggest the coacting combination of these elements or the function of said combination as in Patent '462. It was not shown that there was coaction between these elements in the prior art or that the roller action was modified by the presence of the brushes. In Davis,

the roller applied the paint and the brush distributed the same, each element acting independently. In Hodschar, the brush swept or scrubbed the carpet and the roller deposited liquid thereon without interaction or modification of the function of one element by another in the performance of its function.

The composite structures demonstrated at the trial were prepared by defendants' expert witness with knowledge of the Bissell applicator and defendants' copy thereof and the uses and accomplishments of said shampoo applicators. These structures contain all the individual elements known from the prior art and also found in the combination of elements of the claims of Patent '462. They find no counterpart in the teaching of the prior art, although the individual elements were known for some time. The combination of elements was not suggested by the prior art, and the function the elements fulfill in the composite reconstruction has not been demonstrated as the equivalent of the structural combination capable of the function performed by the Bissell device. The roller of the composite structure deposits foam on a carpet, and the brushes distribute and scrub it into the nap of the carpet. Each element functions separately without apparent coaction by modification of one another as in the Bissell applicator.

The Abdo device, which uses scrubbing brushes in combination with a block sponge, does not suggest use of a roller or modification of the controlled foam-generating capacity or function of a roller by interaction with adjacent brushes.

Contemporaneous efforts of adapting polyurethane covered rollers to the purpose of cleaning carpets with detergent foam applications by Linenfelser and Buechler do not present an equivalent coaction of roller and brushes as in the Bissell applicator, although they embody one principle of the device in suit; namely, the generation of foam by aeration on deformation of the roller.

The court finds that the device specified in the claims of Patent '462 differs from the prior art in that the function performed by the combination of previously known elements achieves a method of home cleaning of carpets dissimilar and distinct from the techniques known or taught by the prior art. This method accomplishes the cleaning operation by means of an application of liquid shampoo foam which is uniformly and progressively generated in a fountain-supplied roller on deformational contact in coaction with deformation modifying brushes under control of an upright handle, with the brushes preparing the nap of the rug for receipt of the foam and distributing same in a rapid manner to prevent excessive moisture penetration of the material to be cleaned. This operation is performed by a standing operator with relative ease and speed, unlike the drudgery and effort required by the scrubbing methods to be accomplished by the prior art.

Based on the findings as to the state of the prior art and the nature of the improvement of the invention in suit, and supported by the facts summarized hereafter, it is the conclusion of the court that the subject matter as a whole of the improvement of said invention is new and useful and was not obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. The device disclosed by the claims in suit of Patent '462, which read upon the device, meets the test of invention of a combination patent under § 103 of Title 35 U.S.C.

The common use of carpets in the home and the numerous attempts to achieve a satisfactory manual cleaning method as shown by the contemporary and prior art references attest to the need of a device offering an improvement in cleaning methods. The individual elements employed in the Bissell device have been known for many years; the foaming detergent action and synthetic foam material were not new in 1956. The facts disclose commercial acceptance and approval of the Bissell applicator. It was copied by the defendants at a time when con-

temporary workers in the field, using old elements and knowledge of foaming detergents and synthetic foam material, did not achieve the combination or its accomplishments of the invention in suit. Other commercial devices in the home carpet cleaning field, such as Linenfelser, Abdo, and the Master's scrubbing brush, all essentially employing the scrubbing method of cleaning, met with limited public acceptance.

The testimony of defendants' expert that the invention was obvious must be considered in light of the failure of workers in the field, seeking an improvement over the earlier scrubbing techniques, to accomplish the combination and function of the Bissell device. Linenfelser and Buechler appreciated the foam-generating capacity of polyurethane covered rollers. Their work nevertheless falls short of performing the rapid, uniformly controlled, and easy application of foam by interaction of brushes and roller.

The failure of plaintiff's expert to test the prior art and to testify concerning the results of the tests of defendants' expert has little bearing on the determination of the state of the prior art. The tests involved relatively uncomplicated problems, the significance of which was fairly demonstrable and obvious to the observer regardless of whether or not he was skilled in the art. Compare Becker v. Webcor, Inc., 289 F.2d 357, 360 (7th Cir. 1961), cert. denied 368 U.S. 970, 82 S.Ct. 445, 7 L.Ed.2d 398 (1962), where the evidence related to a "highly technical field of theoretical electronics far beyond the common knowledge of any layman uneducated in this area."

*Presumption of Validity*

■ The presumption of validity is a positive factor which must be overcome by one who asserts invalidity. Artmoore Co. v. Dayless Mfg. Co., Inc., 208 F.2d 1 (7th Cir. 1953), cert. denied 347 U.S. 920, 74 S.Ct. 518, 98 L.Ed. 1075 (1954). This presumption is strengthened when the best art relied on by defendants was the art considered and rejected by the Examiner before granting the patents. This rule applies also as to prior art which is no more pertinent than that rejected by the Examiner. J. R. Clark Co. v. Geuder, Paeschke & Frey Co., 159 F.Supp. 948 (E.D.Wis.1957), aff'd 259 F.2d 737 (1958), cert. denied 359 U.S. 914, 79 S.Ct. 587, 3 L.Ed.2d 576 (1959). Patents in the same class to which the subject matter claimed belongs and readily accessible to the Examiner must be deemed reviewed by him and discarded. Elgen Manufacturing Corp. v. Grant Wilson, Inc., 285 F.2d 476 (7th Cir. 1961), citing Artmoore, supra.

Defendants' principal prior art references—Lichter, Mitchell, Sporer, and Abdo—were before the Examiner. Others relied on by them as, for example, Dixon, Rosen, and Davis, are no more pertinent than Mitchell and Mount, respectively, which were considered.

■ Defendants have not disputed the applicability of a presumption of validity under these circumstances. They maintain, however, that the presumption of validity is destroyed because the Patent Office was given incorrect information regarding the prior art patents—Mitchell, Lichter, and Sporer—during the prosecution of such claims.

The Patent Office Examiner was told that the rollers of Lichter and Sporer and the brushes of Mitchell were not capable of aerating detergent and deforming to squeeze detergent foam therefrom into the nap of the rug; that said devices, providing relatively thin fabric or felt coatings, were incapable of providing adequate foaming actions even if supplied with substantial radial thickness; and that the brush of Mitchell would not be usable in applying a foam detergent to a rug.

Defendants' expert demonstrated on the trial that all of said devices could cause a foam to be placed on a surface and was of the opinion that the flexing

of felt would aerate detergent fluid supplied to it on compression, thus producing foam.

The demonstrated foaming capacity of these devices, about which the Examiner was misled, has not been shown to be the equivalent of the inherent capacity of the roller in the Bissell device, coacting with its brushes in the generation and application of an amount of detergent foam adequate to permit its uniform and rapid application without undue soaking of the carpet. The misstatements are not of sufficient materiality and severity to overcome the presumption of validity in this case. Further, the court has determined the nonobviousness of the subject matter of the combination invention based on the evidence of the case and independently of the aid of a presumption of validity.

*Patentability of the Claims of Patent '559*

It remains for the court, having concluded that the claims of Patent '462 are patentable, to determine the validity of the claims of Patent '559 insofar as they differ or add to the subject matter of Patent '462.

The prior art references as to claim 8 of Patent '559—Henning and Abdo—show a unitary, removable mounting for such elements as brushes, block sponges, or rollers. The removable subassembly of claim 8 of Patent '559 does not participate in the coaction of the elements of the cleaning apparatus but is in the nature of a mechanical expedient in manufacturing and facilitating the care of the device. The construction of such subassembly providing a removable mounting for roller and brushes is not new and would have been obvious to a person skilled in the art at the time the claimed invention was made. It is the conclusion of this court that insofar as claim 8 adds the element of a removable rectangular frame for mounting of roller and brushes to the patented subject matter of Patent '462, this does not constitute patentable invention.

Claim 11 defines the extension of the periphery of the roller of a device which is the subject matter of the claims of Patent '462 beyond the plane of the bristles of the brushes. This specification is suggested in the prior art of Sporer and Wisner. It does not independently create a new coaction between the roller and bristles of the Bissell device as described above but merely modifies an already patented principle to achieve greater efficiency in operation.

Claim 11 adds nothing to Patent '462 that would not have been obvious to a person skilled in the art. The tilting control of the handle was inherent in the specifications of the claims of Patent '462. Its modification by extension of the periphery of the roller was a mechanical expedient within the competence of any worker in the field.

*Defense of Aggregation*

Defendants contend that claims 3, 8, 13, and 15 of Patent '462 and claim 11 of Patent '559 are invalid as being merely an aggregation of old elements.

■ Whether a given device is a combination or an unpatentable aggregation of elements previously known depends upon the role the various elements play in the use of the device. If said elements function separately and independently in performing the accomplishment, they constitute an aggregation; if their functioning is interdependent or coordinate in the accomplishment of the device, there is combination. It has been established that the brushes of the Bissell device, by bearing part of the load of the applicator, modify the deformation of the roller and thereby coact in the foam generation together with the deforming pressure exerted by the handle. Each of these elements contributes to the attainment of the object of the whole device. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950). Claims 3, 8, 13 and 15 of Patent '462 are not invalid for aggregation.

Claim 11 of Patent '559, assuming it had been held patentable as nonobvious, would also constitute a valid combination claim, since the construction of the roller, including the positioning of its periphery, simultaneously coacts with the other elements which produce a new and practical result. Church of Religious Science v. Kinkead Industries, Inc., 234 F.2d 573, 576 (7th Cir. 1956).

Counsel's statement in conjunction with the prosecution of an abandoned method claim as to the Bissell device that the brush and roller may function independently does not create an estoppel to deny the cooperation of these elements as demonstrated on the trial.

## Double Patenting

Claims 8 and 11 of Patent '559 describe distinct details of construction, the use of a rectangular removable frame for mounting the brush and roller, and the extension of the roller beyond the plane of the brushes, which details are not specified in the claims of Patent '462, and which this court has held nonpatentable because of obviousness.

Assuming arguendo the validity of these claims, their patentability would not be defeated for double patenting because they describe distinct and new matter and because there would be no extension of the monopoly of Patent '462 by virtue of the disclaimer filed by Bissell which results in the simultaneous termination of Patents '462 and '559. J. R. Clark Co. v. Jones & Laughlin Steel Corp., 288 F.2d 279, 281 (7th Cir. 1961), cert. denied 368 U.S. 828, 82 S.Ct. 49, 7 L.Ed.2d 32 (1961).

## INFRINGEMENT

Defendants concede infringement of all claims in issue of both patents except as to claim 8 of Patent '559 relating to the subassembly frame carrying brushes and roller of the shampoo applicator.

The accused device has a rectangular removable frame. The brushes are mounted on the longitudinal sides of said frame as in claim 8 of Patent '559. The roller of the accused apparatus is supported by the frame, but it is directly carried by bearing supports in the body member itself and is a separately removable element. There is a further distinction in that in Bissell the plastic shaft of the roller rests on metal bearing supports, while in the accused structure it rests on plastic bearings.

Assuming arguendo the validity of claim 8 of Patent '559, the court would hold said claim infringed by the structure of the subassembly of the accused device. Defendants' apparatus embodies the salient features specified in claim 8. The separate mounting of the roller is merely a minor modification of the specifications.

## Nature of the Infringement

Defendants copied the Bissell device with knowledge that applications for patents in respect thereto were pending. They entered the market in competition with Bissell in 1959 and continued to make and sell the accused device after the patents in suit issued and to date of trial.

Prior to the manufacture and marketing of the accused device, defendants were advised by recognized patent counsel that Bissell had filed patent applications on its rug shampoo applicator, but that in view of the prior art it would not obtain broad protection on the reservoir mounting of the handle with trigger-operated valve and the manifold distributor and roller. Counsel also advised that defendants should avoid copying the specific brush and roller mounting structure of the Bissell applicator. This defendants attempted to accomplish by modification of the subassembly carrying the brushes and roller.

Under these circumstances it has not been shown that defendants did not entertain a good faith, reasonable belief that the claims of the patents would be held invalid. Artmoore Co. v. Dayless Mfg. Co., Inc., 208 F.2d 1 (7th Cir. 1953), cert. denied 347 U.S. 920, 74 S.Ct. 518, 98 L.Ed. 1075 (1954). Plaintiff has not met

its burden of establishing a deliberate purpose to infringe. Upjohn Co. v. Italian Drugs Importing Co., Inc., 190 F. Supp. 361, 367 (S.D.N.Y.1961). Defendants' competitive practices of successive price cuts of the applicators fall short of constituting the unfair dealing between the parties held to support a finding of willful and wanton conduct in Copease Manufacturing Co., Inc. v. American Photocopy Equipment Co., 298 F.2d 772 (7th Cir. 1961).

## MISUSE OF PATENTS

■ The shampoo purchase requirements directed at Bissell's immediate customers, rather than the ultimate consumer, furnished Bissell with a means of using its patent monopoly to further the sales of its unpatented shampoo. The purchase requirements did more than to insure the availability of an adequate supply of shampoo to furnish the consumer with a moderate sample thereof. The requirements of the January lists required the dealers to purchase twice as many units of shampoo as applicators. The July shampoo purchase requirement was on a unit-for-unit basis but still left the amount of shampoo per unit unspecified and, therefore, unrelated to any amount that might be designated as a sample to test the efficiency of the applicator.

There was misuse of Patent '462 (and of Patent '559 had said patent been found valid) by Bissell's purchase requirement of shampoo as set forth in the price lists to its customers of January 1, 1961 and July 1, 1961. This misuse continued from date of issuance of the patents, March 21, 1961, until October 2, 1961, when plaintiff purged itself and dissipated the effects of the tie-in shampoo purchases by rescinding these requirements and by making the discontinuance of this practice effectively known. While the supplementary price lists of July 20, 1961, did not sufficiently call attention to the cancellation of the purchase requirement to accomplish a purge, this was achieved by plaintiff's letters of September 14, 15, and 22, 1961, to the trade and by the price lists effective as of October 2, 1961.

Under these circumstances no reasonable business purpose for the shampoo purchase requirements has been shown other than plaintiff's intent to use its patented device to promote the sale of its unpatented shampoo. This conduct constitutes misuse of patents whereby Bissell gained an unfair competitive advantage in the liquid shampoo market. Carbice Corporation of America v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819 (1931); Leitch Manufacturing Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371 (1938); Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942); and American Lecithin Co. v. Warfield Co., 105 F.2d 207 (7th Cir. 1939), cert. denied 308 U.S. 609, 60 S.Ct. 175, 84 L.Ed. 509 (1939).

Bissell's other activities, allegedly amounting to misuse of patents continuing to this date, fall short of constituting practices which would deprive plaintiff of its remedy for infringement of its patent under the circumstances of this case. No authority has been cited that said practices singly or in combination would constitute misuse of patents or were other than common practice in the appropriate merchandising field.

■ The conditioning of the "guarantee" of the applicator upon use of a shampoo manufactured by plaintiff and known to it as possessing the qualities necessary for safe and efficient operation of the applicator appears to be a reasonably necessary practice where other available cleaning products were known to have deleterious effects on the apparatus as well as the surfaces to be treated. Other manufacturers follow this practice as may be seen from the patented Abdo device, the Magic Carpet Brush, manufactured by Service Master, which specifies use with Service Master products as a condition to its guarantee.

■ Bissell's cooperative advertising practices, discontinued as of October 2, 1961, cannot be considered improper under the circumstances of this case. Faced with a copy of its applicator offered by an aggressive competitor at successively lower prices, Bissell did not unreasonably use its advertising funds for promoting its applicator and related products and limit its expenditures to its own products. Participation in the cooperative advertising scheme, which was discontinued by October 2, 1961, was entirely voluntary, as were the purchases entitling Bissell's customers to certain bonuses. There is no reason why plaintiff should bear part of the cost of advertising competing products.

■ The propriety of packaging certain of its models of applicators together with a 22 ounce container of its shampoo and the sale of said combination at one unit price presents a more difficult question. Counsel have cited no case squarely in point governing such practice as alleged misuse of patents. It is the opinion of the court that the circumstances here presented distinguish the case from Cardox Corp. v. Armstrong Coalbreak Co., 194 F.2d 376 (7th Cir. 1952), cert. denied 343 U.S. 979, 72 S.Ct. 1076, 96 L. Ed. 1336 (1952). In Cardox, the tie-in between the unpatented mining equipment and the patented air cartridge continued for the duration of the lease, effectively depriving the noninfringing product of any competitive status during the term of the lease. Although the court found the question not free from doubt, it held that plaintiff's conduct constituted a misuse of patents.

Here the allegedly tied-in unpatented product, a 22 ounce container of liquid shampoo, was of an amount sufficient only to clean a 9′ x 18′ carpet. After the shampoo was consumed and for the remainder of the life of the applicator, the end users were free to purchase any desired liquid shampoo, and competitors were equally free to vie for the trade in shampoo. Plaintiff has established a proper manufacturer's motive in furnishing a sample of its own shampoo for the safe and efficient initial operation of the applicator which introduced a new concept in home carpet cleaning. Defendants also sold combinations of shampoo and applicators, in one instance offering a combination at one unit price of one applicator together with one-half gallon of defendants' shampoo.

It has not been claimed that there is per se illegality in the "guarantee," advertising, or combination packaging practices. Further, defendants have not shown an adverse effect on free competition in the rug shampoo market resulting from plaintiff's conduct. While it was proved that plaintiff enjoyed a 53.46 per cent gross profit on sales of its shampoo for a given period, a determination of gross profit on plaintiff's applicators, which was not furnished, would have had to reflect the vigorous competition of the infringing device. In determining this equitable question, defendants' practices in establishing its applicator and shampoo on the market may not be disregarded. Under these circumstances, Bissell's conduct—other than that held as constituting misuse of patents—falls short of extending its patent monopoly to an unpatented product to the competitive disadvantage of others in the trade.

PERIOD OF LIABILITY

■ Plaintiff is not entitled to damages arising prior to issuance of its patent on March 21, 1961. It is the established rule that no damages are allowable except for the period which follows the grant of the patent for infringement of its claims during the term thereof. American Ornamental Bottle Corp. v. Orange-Crush Co., 76 F.2d 969 (4th Cir. 1935); Zalkind v. Scheinman, 139 F.2d 895, 904 (2d Cir. 1943), cert. denied 322 U.S. 738, 64 S.Ct. 1055, 88 L.Ed. 1572 (1943). The manufacture and sale of a copied device during the pendency of another's application for a patent therefor does not constitute contributory in-

fringement even though the life expectancy of said product may extend into the term of the patent grant. Cf. Jones v. Radio Corporation of America, 131 F. Supp. 82 (S.D.N.Y.1955), explaining contributory infringement under § 271(b) of Title 35 U.S.C. Further, the Radio Corporation case and other decisions cited by plaintiff are not authority for the contention that damages for contributory infringement would be allowable for a period prior to infringement after issuance of a patent.

The court having held that the period of misuse of plaintiff's patent extended from issuance of the patent until October 2, 1961, it follows that damages are to be computed for a period beginning with October 2, 1961.

It is the conclusion of the court that plaintiff is entitled to judgment of an injunction permanently restraining defendants from infringing the claims of Patent '462 here found valid, and to damages and costs against the defendants.

The foregoing opinion shall stand as the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C. A brief summary of ultimate findings and conclusions follows.

## FINDINGS OF FACT

1. This action arises under the patent laws of the United States.

2. The combination of elements and their uses as specified in claims 3, 8, 13, and 15 of Patent '462 are not taught or suggested by the prior art. They perform the function of a cleaning operation of rugs different from that accomplished by the devices of the prior or contemporaneous art.

3. The structure and use of the removable subassembly and extension of the periphery of the roller of the rug shampoo applicator specified in claims 8 and 11, respectively, of Patent '559 were taught by the prior art.

4. The elements defined in claims 3, 8, 13, and 15 of Patent '462 and claim 11 of Patent '559 coact interdependently in performing their functions.

5. The removable subassembly specified in claim 8 of Patent '559 and the extension of the periphery of the roller of claim 11 thereof were not specified in claims in issue of Patent '462.

6. No extension of the grant of monopoly as to Patent '462 occurred by issuance of Patent '559 in respect to the matters specified in claims 8 and 11 thereof.

7. Claims 3, 8, 13, and 15 of Patent '462 and claims 8 and 11 of Patent '559 read upon the accused device, defendants' rug shampoo applicator.

8. Plaintiff did not meet its burden of establishing that defendants had a deliberate purpose to infringe the claims of its patents by development, manufacture, and sale of the accused device.

9. Plaintiff tied in sales of its unpatented liquid shampoo to sales of its patented applicator to its direct customers at the time of the issuance of the patents on March 21, 1961.

10. Plaintiff discontinued the tie-in sales and dissipated the effects thereof by October 2, 1961.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the cause under the patent laws of the United States.

2. The subject matter of claims 3, 8, 13, and 15 of Patent '462 constitutes new and useful improvements in the art of carpet cleaning and was nonobvious to a person skilled in said art at the time the invention was made.

3. The subject matter specified by said claims of Patent '462 is patentable combination invention under § 103 of Title 35 U.S.C.

4. Claims 8 and 11 of Patent '559 were obvious expedients in improving the apparatus defined in the claims of Patent '462.

5. Said claims of Patent '559 do not constitute patentable invention.

6. Claims 3, 8, 13, and 15 of Patent '462 are not invalid as an aggregation of independently acting old elements.

7. Claim 11 of Patent '559, if invention, would not be invalid as an aggregation of old elements.

8. Claims 8 and 11 of Patent '559, if invention, would not be invalid for double patenting.

9. Claims 3, 8, 13, and 15 of Patent '462 are infringed by defendants' accused device.

10. Claims 8 and 11 of Patent '559, if valid, would be infringed by defendants' accused device.

11. Plaintiff is not entitled to treble damages or attorneys' fees in this action.

12. Plaintiff misused its patents by using the monopoly of their grant to further sales of its unpatented shampoo.

13. Plaintiff is not entitled to damages with respect to the period of misuse of its patents.

14. Plaintiff has not established that it is entitled to damages for any period prior to issuance of its patents.

15. Plaintiff is entitled to judgment of injunction, damages, and costs in accordance with the findings and conclusions here set forth.

NOW, THEREFORE, IT IS ADJUDGED AND ORDERED that defendants, E. R. Wagner Manufacturing Company, Wagner Products Corporation, and Glamur Products, Inc., and each of them, are hereby permanently restrained from the manufacture, use, and sale of rug shampoo applicators in infringement of the claims of United States Letters Patent No. 2,975,462 during the unexpired term of said letters patent.

IT IS FURTHER ORDERED that plaintiff shall have judgment of damages as determined by an accounting by a master to whom the matter shall be referred with taxable costs against the defendants.